## No. 7743.

### RICHARDSON ET AL. *v.* SEYBOLD ET AL.

PERSONALTY.—*Lien.*—*Judgment.*—*Execution.*—A judgment is not a lien upon personalty, but the issuing of an execution binds personalty.

SAME.—*Mortgage.*—A purchaser at an execution sale of personal property mortgaged after the judgment was taken, but before execution was issued, buys it subject to the mortgage.

PRACTICE.—*Supreme Court.*—*Assignment of Error.*—*New Trial.*—That the trial court erred in making special findings of facts contrary to the evidence, is not a proper assignment of error, but ground for a new trial.

PLEADING.—*Bad Answer.*—*Bad Reply.*—A bad reply is good enough for a bad answer, on demurrer.

ADMISSION.—*Estoppel.*—*Interest in Property Mortgaged.*—If one intending to take a mortgage of personal property ask another if he claims any interest in it, and he answers, "I do not," such admission is sufficient evidence, in a subsequent controversy between them, to justify a finding that he had no interest, and the question of estoppel would not be material.

From the Cass Superior Court.

*D. B. McConnell* and *T. C. Annabal*, for appellants.
*S. T. McConnell*, for appellees.

BICKNELL, C. C.—This was an action by the appellee Seybold upon promissory notes secured by mortgages of personal property. The notes and mortgages were made by Smith

Richardson *et al. v.* Seybold *et al.*

& Hall, and were payable to the said appellee. Richardson was a junior mortgagee. The mortgaged property was a printing press and its appurtenances, known as the Star office.

A demurrer to the complaint was overruled. Richardson answered separately in six paragraphs, of which the first was the general denial. The others, except the sixth, alleged that Richardson was the owner of the property at the dates of the mortgages, and that such ownership was then well known by Seybold. The sixth paragraph averred that Smith & Hall had possession of the property under a contract, by which it was to become theirs when they paid certain debts, including a judgment in favor of one Uhl, and that the plaintiff and several others, for a certain consideration, agreed with Smith & Hall to lend them $5,000 to be applied in payment of said debts, but failed to do so, by reason whereof said judgment was not paid, and an execution was issued upon it, under which the mortgaged property was sold to said Richardson, and that said judgment was a lien on said property, prior to the lien of said mortgages, whereby Richardson "became entitled to hold the property free from any claim on account of said mortgages."

Smith & Hall filed an answer in six paragraphs, to wit:

1st. The general denial.

2d. Payment before suit brought.

3d. That Seybold was not the real party in interest, and that the notes and mortgages were executed, as temporary expedients only, in favor of Seybold as the representative of the real parties, who, for certain considerations, had agreed to lend Smith & Hall $5,000, and had failed to do it; and that said mortgages were given on the promise that said money should be soon advanced, but, in fact, it was not advanced, to the damage of Smith & Hall of $1,000, which is set up as a counter-claim. This paragraph is sworn to, and its prayer is that the suit be abated for want of proper parties.

4th. That the plaintiff, when he took the mortgages, knew that Smith & Hall owned the property conditionally, and that the real owners of it were, Smith of one-fifth, and Richardson of four-fifths; that certain persons, including the plaintiff, offered Smith & Hall $5,000 as a loan if they would run their newspaper in the interest of said persons, which offer was accepted, but the parties furnished $3,000 only; that said money was to be applied, in part, to the payment of the Uhl judgment; that said parties did not pay said judgment, but let the mortgaged property be sold on execution issued upon said judgment; that said notes and mortgages were given to Seybold as a temporary expedient only, and on the "solemn promise" that the remaining $2,000 should be soon advanced; but it was not advanced, to the damage of said Smith & Hall $3,000, and this is set up as a counter-claim. It is also averred in this paragraph that Seybold is not the real party in interest.

5th. That, as to the claim for costs, the promise alleged in the complaint was without consideration and void.

6th. That Seybold, when he took the mortgages, knew that Smith & Hall were not to own the property unless they paid certain debts; that he and others offered Smith & Hall $5,000 as a loan, to enable them to pay said debts, in consideration of their agreeing to run their newspaper in the interest of said persons, and that, when said debts were paid, said Smith & Hall were to execute to such persons a note and mortgage; that only a small part of said $5,000 was advanced, and that then the notes and mortgages in suit were executed "on the solemn promise and agreement" of said Seybold and said other persons, that the remainder of the $5,000 should be soon advanced, but it was not advanced, to the damage of said Smith & Hall of $5,000, and this is set up as a counter-claim.

The record is not very clear, but it seems that demurrers to all the paragraphs of each of the foregoing answers, ex-

cept the general denial, were overruled. The appellee filed replies in denial of each of the special paragraphs of answer, and to the second, third, fourth and fifth paragraphs of Richardson's answer, he filed a second reply and a third reply.

The second reply alleged that appellee notified Richardson that he was about to loan money to Smith & Hall on a mortgage of said property, and asked him if he had any interest in the property, to which he replied, no ; that the appellee had no knowledge of Richardson's claim, and, relying on his statements, loaned Smith & Hall the money, and took the mortgages, whereby Richardson was estopped from asserting any title to the property.

The third reply alleged that Richardson, at the time of the execution of said notes and mortgages, consented thereto, and, to induce appellee to lend his money and take said mortgages, "assured" the appellee that he owned none of the property, and made no claim thereto ; that the appellee had no knowledge of Richardson's claim, and, relying on his statements, loaned the money and took the mortgages.

Richardson demurred to each of these special replies :

1st. For want of facts sufficient to constitute a reply ;

2d. Because they were departures from the complaint.

The demurrers were overruled, and Richardson excepted. The cause was then submitted to the court for trial, and, at the request of the appellants, a special finding of the facts was made, and the conclusions of law were stated separately :

"1st. That, on the 15th day of December, 1875, the defendants William H. Smith and John H. Hall executed and delivered to the plaintiff a chattel mortgage on the property described in the fourth paragraph of the complaint, to wit, the printing-office known as the Star office." (Then comes a statement of the property, by items.) "The consideration of the mortgage was a loan of money by Seybold, the plaintiff, to Smith & Hall to the amount of $2,700,

which was to be advanced to the mortgagors, at different dates, between the 15th day of December, 1875, and the 1st day of April, 1876. The entire amount was to become due on the 15th day of June, 1876. The mortgage was duly acknowledged before T. C. Annabal, a notary public, on the 15th day of December, 1875, and entered of record in mortgage record R, on the 16th day of December, 1875, in the recorder's office of Cass county, Indiana, in the county where the mortgagors reside, and where the property was situated at the time the mortgage was executed.

"2d. That, on the 27th day of March, 1876, the said William H. Smith and John H. Hall, with the consent of the plaintiff, exchanged the press described in the first mortgage as one new press, 35 by 48, Acme pattern, for another new press, known as and called Campbell's Complete, and for the consideration of the loan, by Seybold to Smith & Hall, of an additional sum of $300, to be paid to them on the 1st of April, 1876, in addition to the $500 provided for in the first mortgage, they made, executed and delivered to Seybold a mortgage on the Campbell Complete press, to secure the payment of the $300, and the sum of $2,700, in all $3,000, on the 15th day of June, 1876, all to draw ten per cent. interest per annum. This mortgage was duly acknowledged, on the 29th day of March, 1876, and recorded in mortgage record S, in the recorder's office of Cass county, State of Indiana, on the 30th day of March, 1876, where the mortgagors then resided, and the property was situated.

"3d. Each of the mortgages provided that the property should remain in the possession of Smith & Hall until default should be made in the payment of the sum of money which they were given to secure, and, if such defalcation should be made, then Seybold should have the right to take possession of the same and sell it without appraisement,

and out of the proceeds pay said sum of money, with the interest thereon, the costs and accruing costs, and the surplus, if any, pay to Smith & Hall.

"5th. That the money, which the mortgages were given to secure, was paid to Smith & Hall, by Seybold, on the following dates, as shown by their several promissory notes, executed on the date of payment:

"$1,300 on the 13th day of December, 1875.

"$500 on the 15th day of January, 1876.

"$400 on the 15th day of February, 1876.

"$300 on the 9th day of March, 1876.

"$500 on the 1st day of April, 1876.

"Each of the notes provides for interest at ten per cent. after maturity, and attorney's fees, payable to the plaintiff on or before the 15th day of June, 1876. The attorney's fees are worth $175.

"6th. All the property described in the mortgage, except the Campbell Complete press, was at one time, and before the execution of the mortgages, owned by a firm doing business as Smith & Hall, which firm was composed of T. C. Annabal and the defendants in this suit. Smith had been in the possession of the property from the time it was purchased, and it had been under the control of Smith and Annabal up to about November 1st, 1875, when the old firm of Smith & Hall was dissolved by Annabal and Richardson retiring. The agreement of dissolution was that a new firm, composed of Smith & Hall, were to be absolute owners of the property described in the first mortgage when they should pay $7,000 of the debts of the old firm ; but, until that was done, Richardson and Annabal were to remain the owners of the property, of which Richardson owned three-fifths. At the time of the execution of the mortgage, the debts had not been paid, nor have they since been paid, by Smith or Hall. After the agreement was made, Smith & Hall remained in possession of the property, and were in possession and con-

trol at the time the mortgage was executed, and it was in their possession at the commencement of this suit. When the property was originally purchased, it was shipped to Logansport in the name of Smith & Hall, listed for taxation in that name, and never was listed as the property of Richardson. Smith & Hall claimed to own the property at the time the mortgages were executed.

"7th. The loan was procured from Seybold by G. N. Fitch, W. H. Johnson and A. Coleman, who, acting for Seybold, undertook and were to see that he had ample security for the loan. Before the loan was made, and before the mortgage was executed, William Johnson, acting for Seybold, went to Richardson for the purpose of ascertaining from him if he had any claims on the property described in the first mortgage. He asked him if he had anything against the Star office, and Richardson answered that he had not. Johnson reported what Richardson said to Coleman, who was also acting for Smith and Seybold in concluding the loan. After the commencement of the suit, Richardson said to Johnson that he had said to him, Johnson, before the mortgage was executed, he had no interest in the property in question. After the mortgage was executed, Fitch asked Richardson if he claimed any interest in the property mortgaged to Seybold, referring to the property in question, and Richardson replied, 'I do not.'

"8th. That Seybold, through those who were acting for him in making the loan, relied upon the statement of Richardson made before the execution of the mortgage, that he had no interest in the property, and, upon the strength of that statement, and, believing that Smith & Hall were the owners of the property, made the loan to them.

"9th. That there was no agreement that the plaintiff was to loan $5,000, or any other sum than that expressed in the mortgages.

"10th. That the plaintiff Seybold is the real party in in-

terest in this suit, and that he has loaned to the defendants Smith & Hall the amount of money called for by the notes and mortgages.''

The following are the conclusions of law:

''1st. That the notes in suit are past due and unpaid, principal and interest, and attorney's fees; that there is due thereon, principal and interest, the sum of $3,512, and the further sum of $175 attorney's fees; total, $3,687, thirty-six hundred and eighty-seven dollars.

''2d. That the plaintiff is entitled to maintain this action in his own name, and that he is entitled to a foreclosure of the mortgage on the property therein described, against all the defendants, for the sum of $3,512, and a personal judgment against the defendants Smith & Hall, for $3,687, without relief from valuation or appraisement laws, with ten per cent. interest; that the defendant Allen Richardson is estopped from setting up any claim to any of the property described in the mortgages in this action against this plaintiff.''

The appellant Richardson moved the court for a new trial, and filed the following reasons therefor:

1st. The finding of the court against him is not supported by sufficient evidence;

2d. The finding of the court against him is contrary to the evidence;

3d. The finding of the court is contrary to law;

4th. The error of law occurring during the trial of said cause, whereby this defendant was prevented from having a fair trial, as set forth in his special bill of exceptions No. 1, in relation to the refusal of the court to allow this defendant to prove the sale of the property in controversy to this defendant, upon the Uhl judgment, against Smith & Hall;

5th. That the verdict in this cause is excessive, and is for $175 more than the facts in the cause and the evidence warrant.

The appellants Smith & Hall also moved the court for a new trial, but filed no reasons therefor. All of the appellants excepted to the conclusions of law and to the findings of the court. The motion for a new trial was overruled, and all the appellants excepted. The defendant Richardson moved the court in arrest of judgment. This motion was overruled, and all the appellants excepted. The court then rendered judgment upon the finding, and this appeal was taken. The appellants jointly assign errors as follows:

1st. The court erred in overruling defendants' demurrer to the complaint;

2d. The court erred in overruling defendants' demurrer to the second and third paragraphs of plaintiffs' reply;

2½. The court erred in the conclusions of law from the findings of facts;

3d. The court erred in making the special findings of facts, the same being contrary to the evidence;

4th. The court erred in his conclusions of law on the special findings of facts;

5th. The court erred in overruling defendant Richardson's motion for a new trial;

6th. The court erred in overruling defendant Richardson's motion in arrest of judgment.

Of these, the second, fourth and fifth are the only ones to be considered. The first and sixth, not being alluded to in the appellants' brief, are regarded as waived. The error marked 2½ is the same as No. 4. The assignment marked 3 belongs to the motion for a new trial. Its matter can not be separately assigned as error.

As to the second assignment of error, to wit, that the court erred in overruling defendant's demurrer to the second and third paragraphs of plaintiffs' reply: These were replies to the second, third, fourth, fifth and sixth paragraphs of the answers. The appellants, in their brief,

say that these replies might be good to the second, third, fourth and fifth paragraphs, but are not good as to the sixth paragraph of Richardson's answer, and that is the only point they discuss as to these replies.

Richardson's sixth paragraph alleges that, after execution of the mortgages, he bought the property at an execution sale, which execution was issued upon a judgment older than the mortgages. But the property in controversy was personal property. A judgment is not a lien upon personalty. It is the issuing of an execution which binds personalty, and, in this case, the issuing of the execution being subsequent to the mortgages, Richardson's title, under his purchase at the execution sale, was of no force against the mortgage. The sixth answer of Richardson was, therefore, a bad answer. There was no error in overruling the demurrers to the second and third replies thereto, because even a bad reply is good enough for a bad answer. *The Ætna Insurance Co.* v. *Baker*, 71 Ind. 102.

As to the fifth assignment of error, to wit, that the court erred in overruling Richardson's motion for a new trial: The fifth reason for a new trial is waived, not having been alluded to in appellants' brief.

The fourth reason for a new trial refers to the ruling of the court in refusing to permit the appellant Richardson to prove his purchase of the property, under an execution issued after the mortgages were created. But the purchaser at such a sale of mortgaged personal property buys subject to the mortgage; therefore, proof of such purchase would have been immaterial. It was rightly excluded.

The other three reasons assigned for a new trial are, that the finding of the court was not supported by sufficient evidence, and was contrary to evidence and contrary to law.

The appellants, in their brief, say that they do not object to any of the findings of the court, except the seventh and the eighth. They claim that these are inconsistent with that part of the sixth finding which states the ownership of the

property, as to three-fifths of it, as having been, at one time, in Richardson. But there is nothing in the findings of which the appellants can complain. The evidence would have fully sustained an express finding that Richardson had no interest in the property at the time of the execution of the mortgages. His own statements to that effect were abundantly proved. There was no error in overruling the motion for a new trial.

The only remaining assignment of error is the fourth, to wit, that the court erred in its conclusions of law, and this assignment is, by the brief of the appellants, confined to the conclusions established upon said findings numbers seven and eight. There is no error in these conclusions, which will warrant the reversal of the judgment. Under the evidence, which fully warranted a finding that Richardson had no interest in the property at the date of the mortgage, the question of estoppel was really not material.

It fully appears, from the record, that the merits of this cause have been fairly determined in the court below, and the judgment ought to be affirmed. 2 R. S. 1876, p. 246, sec. 580; *Child* v. *Swain*, 69 Ind. 230.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment of the court below be, and the same is hereby, in all things affirmed, at the costs of the appellants.