Standley *v.* Northwestern Mutual Life Insurance Company.

No. 10,331.

## STANDLEY *v.* NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY.

PRACTICE.—*Pleading.—Supreme Court.*—Where the plaintiff's reply is tested by demurrer, and the demurrer is overruled, no effort being made by him to carry it back to the answer and no exception taken by him, the Supreme Court will not at his instance hold the answer bad.

LIFE INSURANCE.—*Right to Recover Premiums.*—Where the risk has once attached, premiums can not be recovered, although the company may subsequently wrongfully declare a forfeiture of the policy.

SAME.—*Right of Assured to Specific Performance.—Set-Off.—Foreclosure of Mortgage.*—An agreement to issue a paid-up policy may be specifically enforced, but the right to specific performance can not be made the ground of a counter-claim by the insurance company to foreclose a mortgage executed to secure a loan of money.

SAME.—*Contract.— Motive.— Consideration.*—The premium paid, or agreed to be paid, for a policy of insurance is the consideration of the contract, and not the motive which induced the assured to take out the policy.

COUNTER-CLAIM.—*Cross Complaint.*—A counter-claim very closely corresponds to the cross bill of the chancery practice, but is more comprehensive, in that it includes recoupment.

SAME.—*What Matters may be Pleaded.*—A counter-claim can only be grounded on matters growing out of or connected with the cause of action, and a matter constituting an entirely distinct cause of action, not connected with the matters stated in the complaint, can not be pleaded as a counter-claim.

SAME.—For a very full discussion of the question, as to what is a counter-claim, see opinion.

DEMURRER TO EVIDENCE.—*Who may Demur.*—The party who has the burden of proof can not demur to the evidence.

From the Cass Circuit Court.

*D. C. Justice* and *D. Turpie,* for appellant.

*T. A. Hendricks, A. W. Hendricks, C. Baker, O. B. Hord, A. Baker* and *E. Daniels,* for appellee.

ELLIOTT, J.—The appellee's complaint is based on a note and mortgage executed by the appellant. The answer is in several paragraphs, and, without interposing a demurrer, the appellee replied.

There are several good paragraphs of answer, and conced-

ing, but by no means deciding, that the sufficiency of an answer may be challenged for the first time by the assignment of errors, still the contention of appellee can not prevail, for even in the case of a complaint one good paragraph will repel an assignment of error alleging that the complaint does not state facts sufficient 'to constitute a cause of action. If there is but one answer, and that is clearly bad, then, perhaps, the court may give judgment on the pleadings, but where there are good paragraphs of an answer this can not be done.

The appellee chose to reply to all of the answers without testing their sufficiency by demurrer, and now argues that it may avail itself of the demurrer to the reply filed by the appellee. The case is entirely unlike that of a defendant who has a bad answer and complains of a ruling holding good a bad reply. Clearly enough his case is well disposed of by informing him that a bad reply is good enough for a bad answer. So, too, the present case is essentially different from that of a plaintiff asking a reversal, where a demurrer has been sustained to a bad reply to a bad answer. In this case the ruling is invoked by a party who secured all he asked and who took no exception, but relies upon an exception taken by his adversary. Our statute is very careful to require that parties who desire to save a question upon a ruling must reserve an exception, and in a very great variety of cases the court has given this statute full and strict effect. There is good reason for the rule. The trial court and the adverse party should be informed that the ruling is to be contested, and the appellate court should be enabled to see from the record what rulings were contested in the trial court. Again, parties ought not to be allowed to shift ground and contest in the Supreme Court points not regularly contested in the lower. The spirit of our statute, and the effectiveness and consistency of our code system of pleading, require that one who secures exactly the ruling he asks, and who takes no exception, should not be allowed to complain on appeal that something more favorable than he asked was not granted

him. It would be a strange perversion of our code practice for the appellate court to compel a trial court to give a plaintiff a new and more favorable ruling than he asked. Such a practice would entail an unjust burden upon the court, break down the provision of our statute requiring parties to except to such rulings as they deem erroneous, and make uncertain all the pleadings in the case. We examined this question with care in *Scheible* v. *Slagle*, 89 Ind. 323, and reached the same conclusion which we now declare. This conclusion is not in conflict with any of our cases.

The cases of *Wiley* v. *Howard*, 15 Ind. 169, and *Reed* v. *Higgins*, 86 Ind. 143, decide that it is error to sustain a demurrer to a reply where the answers are bad. The cases of *Ashley* v. *Foreman*, 85 Ind. 55, *Starkey* v. *Neese*, 30 Ind. 222, *Knippenberg* v. *Morris*, 80 Ind. 540, *Richardson* v. *Seybold*, 76 Ind. 58, *Ætna Ins. Co.* v. *Baker*, 71 Ind. 102, and *Menifee* v. *Clark*, 35 Ind. 304, hold that where the answer is bad there is no error in overruling a demurrer to the reply although it is also bad. It is plain that none of these cases touches the question here, for the appellee is not complaining that a demurrer was sustained, nor the defendant that a demurrer was overruled. The complaint is, that the court did not volunteer to give the plaintiff more than it asked. As the appellee was content with having the reply held good, there ought not to be a shifting of ground in the appellate court, and a demand for something not heard of in the court below. It was only after a long struggle that the court went as far as it did in the cases we have cited, for all our earlier cases held that a demurrer to the reply did not go back to the answer. *Johnson* v. *Stebbins*, 5 Ind. 364; *Mason* v. *Toner*, 6 Ind. 328; *Gimbel* v. *Smidth*, 7 Ind. 627. The rule has been extended as far as it can be without producing great confusion and injustice, and we do not think it should be so far extended as to yield the appellee on appeal what he did not seek in the trial court. The principle which we recognize and apply was declared in *Haymond* v. *Saucer*, 84 Ind. 3, where it was said:

" Counsel for the appellant claim, 'that the sufficiency of the complaint is called in question by the demurrers to the answers'—there having been separate answers addressed to each paragraph severally, to which answers demurrers were filed and overruled. It is plain that those rulings do not reach back to the complaint. If the demurrers had been sustained, and the appellant had assigned error upon the rulings, the respective paragraphs of the complaint would have been brought under consideration, so far, at least, as necessary to determine the sufficiency of the respective answers. So too, if the appellee had, in this case, assigned cross errors upon the overruling of the demurrers to the answers." Where the plaintiff's complaint and reply are left standing, he gets all that he is entitled to have and all that he asks; if he thought himself entitled to something more, he should have asserted his rights at the proper time, and have saved them by an exception as the statute requires. Where a plaintiff defends a ruling on the reply by asserting that the answer to which it was addressed was bad, he occupies a very different position from that occupied when he assails an answer, unchallenged in the court below, for the purpose of securing a ruling in the appellate court not sought in the lower. So, too, does this appellee stand in a very different position from that of a plaintiff warding off an attack on his reply by showing that the answer was bad. Here the attempt is not to protect the reply, for it is not assailed, but the attempt is to secure a new ruling on one paragraph of several, where no question was made or reserved in the trial court. If the appellee were simply defending the reply and seeking to prevent a reversal on the ground of its sufficiency as a reply to a bad answer, we should be confronted by a very different question from that presented by the record.

Leaving now the question of pleading, we come to the question presented by the ruling on the demurrer to the evidence, remarking, however, that it is very doubtful whether the de-

murrer to the evidence did not waive all objections made by the demurrers to the pleadings. *Lindley* v. *Kelley*, 42 Ind. 294. The answers of set-off and recoupment were not proved, because, conceding the evidence sufficient in all other particulars, there was no evidence that any damages resulted from the breach of the contract insisted upon by the appellant. Granting that the appellant proved that he had a contract entitling him to a paid-úp policy, and granting, also, that he had performed all his part of the contract, still he proved no damages, because he did not show that the policy would have been of any value. As he gave no evidence of value, the presumption is that the damages were merely nominal, and it is well settled that a failure to award nominal damages will not warrant a reversal.

Premiums paid to secure insurance can not be recovered if the risk has once attached. If a policy is valid in its inception, then the company can not be required to refund the premiums received, although it may subsequently wrongfully attempt to declare a forfeiture. *Continental Life Ins. Co.* v. *Houser*, 89 Ind. 258; Bliss Life Ins. 750; May Ins., sections 567, 568, 569. The appellant could not, therefore, set off or recoup the premiums paid by him, although it should be granted that the company committed a wrong in refusing a paid-up policy and in denying the contract claimed by appellant.

Where an assured is entitled to a policy under his contract with the company, he may maintain a suit in equity to enforce specific performance of the contract. The suit is in all its essential features a suit for specific performance, and may be maintained in cases where the courts would entertain suits of a similar nature. *Hayner* v. *American, etc., Co.*, 69 N. Y. 435; *Cohen* v. *New York, etc., Co.*, 50 N. Y. 610; S. C., 10 Am. R. 522; *Day* v. *Connecticut Life Ins. Co.*, 45 Conn. 480; S. C., 29 Am. R. 693; Pomeroy Spec. Perf., section 16. But in holding, as we do, that a suit for specific performance of a contract to execute a paid-up policy of insurance may be main-

tained, we are not necessarily carried to the conclusion that the right to compel the execution of such a policy may be made available, as a counter-claim, in a suit brought to foreclose a mortgage executed to secure a loan of money.

Assuming that the evidence shows that the appellant had a contract entitling him to a paid-up policy, and that he performed all his part of that contract, and was entitled to have it specifically performed, the question still remains whether the right to demand specific performance of such a contract can be properly asserted in a suit to foreclose a mortgage given to secure a loan.

The evidence shows that the two transactions were legally distinct and different, and that each stood upon its own independent consideration. In the one case the consideration for the note and mortgage was the loan of money; in the other the consideration for the policy was the payment of premiums. There is nothing which, in law or equity, binds the two transactions together, or authorizes the inference that one grows out of the other.

There is an essential difference between the motive which induces a party to enter into a contract and the consideration yielded for its support. "Motive," said an English judge, "is not the same thing with consideration." *Thomas* v. *Thomas*, 2 Q. B. 851. In *Philpot* v. *Gruninger*, 14 Wall. 570, it was said: "It is, however, not to be doubted that there is a clear distinction sometimes between the motive that may induce to entering into a contract and the consideration of the contract. Nothing is consideration that is not regarded as such by both parties." To a like import is the decision in our own case of *Clark* v. *Continental, etc., Co.*, 57 Ind. 135, where it was said: "The motive prompting one to execute a contract, and the consideration of the contract, are entirely different things." The motive which influenced the appellant to take out the policy was the desire to secure the loan, but this was not the consideration on which the contract of insurance rested; on the other hand the desire to secure premiums

on the policy influenced the appellee to make the loan, but this was not the consideration given for the note and mortgage; that consideration was the loan of money.

A counter-claim very closely corresponds to the cross bill of the old chancery practice, but is more comprehensive, for it embraces recoupment. *Woodruff* v. *Garner*, 27 Ind. 4. Our code blends the two systems of procedure, common law and chancery, and there are two elements found in our statutory counter-claim; from the common law is derived the element of recoupment, and the other element is taken from the chancery rule respecting cross bills. A brief consideration of these prime constituents of a counter-claim will assist in securing a just conception of its character and office.

Recoupment signifies reduction, and originally a defendant could only secure a reduction of the amount of recovery by recouping. It has been steadily held that recoupment is only proper in cases where the defendant's claim grows out of the same contract or transaction as that upon which the plaintiff's cause of action is founded. *Davenport* v. *Hubbard*, 46 Vt. 200; 2 Parsons Cont. 742. The essential difference between set-off and recoupment is that in the former case it may consist of a claim arising out of an independent contract; while in recoupment the damages claimed must flow from the same contract as that relied on by plaintiff, or must grow out of the same transaction as that on which the plaintiff's cause of action is founded. 1 Sedgwick Damages, 431; 1 Sutherland Damages, 261; Waterman Set-Off, p. 480, section 464; *Ward* v. *Fellers*, 3 Mich. 281; *Batterman* v. *Pierce*, 3 Hill, 171. The principle which underlies the whole doctrine inflexibly requires that the matter set up by way of recoupment should grow out of the same subject as the cause of action. 1 Sutherland Damages, 265, 270, 272.

A cross bill under the chancery practice, to quote the language of an author long held in high esteem, " can be sustained only on matter growing out of the original bill." 2 Daniel Ch. Pr. 1548 *n*. The same doctrine is sometimes stated

in this form : A cross bill is filed touching matters in ques-
tion in the original bill.  Story Eq. Pl., section 389; Mit-
ford Eq. Pl. 80; *Cross* v. *DeValle,* 1 Wall. 1.  This court
has given this principle full recognition. *Hunter* v. *Mc-
Laughlin,* 43 Ind. 38.  It is quite clear, therefore, that the
elements combined in our statutory counter-claim unite in
the essential particular, that the matter alleged by way of
counter-claim must grow out of the subject of the original
suit, and this consideration exerts an important influence
upon the construction of the statute.

In the construction of statutes it is always proper to con-
sider the law as it stood at the time the statute was adopted
and the change intended to be accomplished.  We know ju-
dicially the purpose our statute was intended to accomplish
because that is matter of history.  The adoption of the re-
formed system of code procedure forms an important epoch
in the history of the law of this State, and we are fully in-
formed as to the causes which led to its adoption, as well as
the purpose it was intended to accomplish.  The purpose is,
indeed, prominently and plainly indicated in the code itself.
A leading purpose was to blend in one system the chancery
and common law procedure, but to so blend them that the
new procedure, while possessing some of the features of both,
should form in itself a complete and harmonious system.  In
executing this purpose the counter-claim was made to include
both recoupment and cross bill, and, perhaps, something more,
but it was not intended to overthrow the fundamental prin-
ciple that the matter made the subject of a counter-claim
should grow out of or be connected with, the subject of the
original suit.  The language of the statute, unaided by ex-
trinsic consideration, indicates with much clearness that the
counter-claim must be connected with the subject of the orig-
inal action, for the provision reads : "A counter-claim is any
matter arising out of or connected with the cause of action
which might be the subject of an action in favor of the defend-
ant, or which would tend to reduce the plaintiff's claim or

demand for damages." Our statute also makes full and explicit provision for the defence of set-off, so that it can not be inferred that the defences of counter-claim and set-off are the same, either in form or substance, and our cases have uniformly. held that they are distinct and different. *Lovejoy* v. *Robinson*, 8 Ind. 399.

Our decisions have invariably treated the counter-claim as proper only in cases where the subject-matter of the counter-claim is connected with the original cause of action, and have refused to permit the defence of counter-claim where the matter relied on was an independent one, having no connection with the subject of the original complaint. In *Douthitt* v. *Smith*, 69 Ind. 463, it was said: "What is now, in this State, very commonly denominated a cross complaint, is practically synonymous with a cross bill in chancery practice, and is, under our present code, technically a counter-claim." In an early code case it was said: "A counter-claim is that which might have arisen out of, or could have had some connection with the original transaction, in view of the parties, and which, at the time the contract was made, they could have intended might, in some event, give one party a claim against the other for compliance or non-compliance with its provisions." *Conner* v. *Winton*, 7 Ind. 523. The case of *Sterne* v. *McKinney*, 79 Ind. 578, and *Sterne* v. *First Nat'l Bank*, 79 Ind. 560, decide that where the matters set forth in the counter-claim or cross complaint are not connected with the matters alleged in the complaint, it is not error to dismiss the cross complaint or counter-claim, on the motion of the plaintiff. The rule was carried very far in *McMahan* v. *Spinning*, 51 Ind. 187, where it was held that the defendant could not set up, as a counter-claim to a complaint for work performed and materials furnished, a demand for damages for a failure to abide by an award of arbitrators to whom the matter of difference had been submitted, although the work and materials sued for were the same as those involved in the plaintiff's cause of action. It was held not to be a valid counter-claim

for the reason that it was not connected with the cause of action " in any proper sense." Liberal as our decisions have been in giving to the counter-claim a comprehensive force and effect, they have firmly held to the cardinal principle that there must be some legal or equitable connection between the matters pleaded as a counter-claim and the matters alleged in the original complaint. *Shelly* v. *Vanarsdoll*, 23 Ind. 543; *Grimes* v. *Duzan*, 32 Ind. 361; *Campbell* v. *Routt*, 42 Ind. 410; *White* v. *Miller*, 47 Ind. 385; *Hinkle* v. *Margerum*, 50 Ind. 240; *Thompson* v. *Toohey*, 71 Ind. 296; *Washburn* v. *Roberts*, 72 Ind. 213; *Williams* v. *Boyd*, 75 Ind. 286.

The matters pleaded as a counter-claim must be connected with the subject of the original action, or the transaction out of which it arose, in a legal sense. It is not enough that the parties are the same, or that the transactions were made on the same day; there must be a recognized legal relation between the matters pleaded as a counter-claim and those pleaded in the original complaint. There must be some legal (using the word legal in its broad signification) relationship between the ground of recovery alleged in the counter-claim and the matters alleged as the cause of action by the plaintiff.

In defining a counter-claim the code provides that it " is any matter arising out of or connected with the cause of action," and if a strict construction were adopted the office of a counter-claim would be very much restricted, for the defendant would be confined to such matters as were connected with or grew out of the statement of the facts pleaded as constituting the grounds of the plaintiff's right to recover. A liberal construction has, however, been given to the code, and a counter-claim is good if it allege matters connected with the subject of the original action. Our cases do, indeed, go further, for they hold that a counter-claim may be maintained where it reaches the object of the action. *Tabor* v. *Mackkee*, 58 Ind. 290; *Grimes* v. *Duzan*, 32 Ind. 361; *Emily* v. *Harding*, 53 Ind. 102; *Woodruff* v. *Garner*, 27 Ind. 4; *Gilpin* v. *Wilson*, 53 Ind. 443; *Gossard* v. *Ferguson*, 54 Ind. 519; *Stillwell*

v. *Chappell*, 30 Ind. 72. We do not say that this doctrine is expressed in direct terms, but it is the result of the decisions. It is a just result, and gives fair and beneficent effect to the spirit of the code, and is in accordance with the views of two of the leading authors on code pleading. Pomeroy Rem., section 775; Bliss Code Pl., section 375, p. 376, n. 1.

The term "counter-claim" is used to denote the matters constituting the ground of defence as well as the pleading in which it is stated, and the term "cross complaint" is very frequently used to designate the pleading, although it has been said that "counter-claim" is the proper title of the pleading. Whatever term may be used to designate the pleading, whether "cross complaint" or "counter-claim," it is only proper where it pleads matter connected with the subject of the original action which entitles the defendant to affirmative relief or mitigates the recovery. There are, therefore, two classes of counter-claims. *Campbell* v. *Routt*, 42 Ind. 410; Pomeroy Rem., section 737. The appellant, in this case, is not entitled to a reversal on the ground that he has shown a counter-claim under the second class—that which tends to reduce the recovery—conceding it made out in all other particulars, because, as we have seen, he did not prove any damages. Nor is he entitled to a recovery on a counter-claim of the first class, because the contract which he seeks to have specifically enforced is an independent one, not legally connected with the cause of action. The New York code is broader than ours, for it adds the words " or transaction; " but even under such a provision the facts proved in this case would not constitute a counter-claim according to the decisions of that court. *Edgerton* v. *Page*, 20 N. Y. 281; *Smith* v. *Hall*, 67 N. Y. 48; *People* v. *Dennison*, 84 N. Y. 272. We may say of the appellant's claim what was said of a somewhat similar case by the Court of Appeals of New York: "It is sufficient to say that assuming he has a right of action, it does not arise out of the contract or transaction set forth in the complaint, * * nor is it connected with the subject of the action." *Boreel* v.

*Lawton,* 90 N. Y. 293. Our conclusion upon this branch of the case is, that where the plaintiff sues to foreclose a mortgage, a counter-claim is not made out by proof of an independent contract entitling the defendant to a paid-up policy of insurance.

We do not find it necessary to decide, and, therefore, do not decide, whether the appellant was or was not entitled to a paid-up policy, for, conceding his claim that he was entitled to such a policy to be just, still he can not, in this case, assert a right to have a policy executed to him, for that is not a proper subject of counter-claim under the case made by the evidence.

The plaintiff's cause of action was admitted, and the burden of proof was, therefore, on the appellant, and the former had a right to demur to the evidence. A party who has the burden can not successfully demur, but where the cause of action is admitted, it is the defendant, not the plaintiff, who has the burden, and a demurrer to the evidence by the latter is entirely proper. *Fritz* v. *Clark,* 80 Ind. 591.

Judgment affirmed.

Filed May 7, 1884.