Reinhard, J.
This is an action of replevin by the appellee against the appellants. In his complaint, the appellee alleges that he is the owner and entitled to the possession of “one Wardevill channeller and cutting tools, consisting of forty-two steel bits, six foot, six-inch cut,” and “one Ingersoll sargent-barchanneller and drill, and tools, consisting of twenty-two steel bits,” all of the value of $316, which is detained from him by the appellants without right, etc. Upon the filing of the proper affidavit, a writ of replevin was issued and the property seized by the sheriff. The appellants filed an answer in two paragraphs, the first of which is a general denial, *446 and tlie second what the appellants’ counsel denominate a counterclaim to set aside the sale of the property in controversy, at sheriff’s sale, under which the appellee claims title. j To this pleading the appellee filed a reply in two paragraphs, one of which was a general denial, and the other matter in avoidance of the second paragraph of the answer. There was a trial by the court and a finding that the plaintiff (appellee ) was the owner and entitled to the property in controversy, and that the value thereof was $325. A motion for a new trial by the appellants, both as to the complaint and counterclaim, was filed and overruled, and judgment was entered upon the finding in appellee’s favor. Both appellants have assigned errors jointly, and the appellant corporation has also assigned separate specifications of error. The principal question discussed relates to the sufficiency of the evidence to sustain the finding.
It is earnestly insisted by appellant’s counsel that under the evidence the appellants were entitled to a finding in their favor upon the complaint, and also to have the sheriff’s sale to the appellee of the property in controversy set aside, under the counterclaim. The appellee’s counsel contend, on the other hand, that there is evidence tending to support the finding upon the complaint, and that, as to the so-called counterclaim, it amounts to no more than an answer in bar, and that it was treated as such by the court and by the appellants themselves in the trial of the cause.
It is also insisted by appellee’s counsel that if the paragraph under consideration is to be treated as a counterclaim, there is nothing to appeal from, as there was no finding or judgment against the appellant upon such counterclaim, nor any motion for such a finding or judgment, or for a modification of the judgment rendered.
The pleading under consideration alleges, in answer *447 to tlie complaint and affidavit in replevin, “and as a complete bar to the said proceedings, ’ ’ that the defendant, J. Newton Dexter, has never had or claimed any interest in or title to the property in controversy, except for and on behalf of his codefendant, and that all things done .by him in regard to said property were done on behalf of his said codefendant; that the plaintiff’s title is based upon a sheriff’s sale made on a certain execution in favor of Samuel Abbott against a certain' corporation named the Illinois and Indiana Stone and Manufacturing and Improvement Company, on a judgment of $140.61, rendered in the Fountain Circuit Court, October 8, 1892; that an execution was issued on said judgment to Vermillion county, October 17, 1892; that on October 20, 1892, said execution was levied on a certain farm, consisting of 110 acres of land of the value of $10,000, and that after two offers of sale said execution was returned indorsed “no sale for the want of bidders;” that said levy was never released nor in any other manner disposed of, but that on September 17, 1893, said judgment plaintiff, ignoring said levy, caused a pretended alias execution to be issued to the sheriff of Fountain county against the said Illinois and Indiana Stone and Coal Manufacturing Company; that the amount for which said execution was issued was excessive as to costs; that the sheriff proceeded without serving said execution upon any one, seized the property in controversy and advertised a sale of it for November 17, 1893, giving barely ten days’ notice, and fixing the time of sale between 10 o’clock A. m. and 4 o’clock p. m., and designated the place of sale as “the coal mine of the Ship-man Manufacturing Company;” that said sheriff made a hurried sale of the property soon after 10 o’clock, and struck off said property in controversy to the plaintiff for $30; that the property so sold was worth $2,000, as *448 tlie said sheriff and plaintiff knew; that plaintiff did not pay the purchase money till 1 o’clock p. M. of said day; that in the meantime the Shipman Mining and Manufacturing Company offered to pay the sheriff the full amount of said judgment and costs, which the sheriff accepted and received, except the sum of $30, which he refused to take unless the plaintiff would waive his claim, which the latter refused to do, but insisted on paying and completing his bid; that before the commencement of this action the defendant tendered said plaintiff $55 gold coin on account of any claim he had concerning said property and that said tender has been kept good in court; that the property in controversy formerly belonged to said execution defendant, but that in December, 1892, this company (appellant) bought the same for a good and sufficient consideration and has ever since owned the same; that defendant company, as part of the consideration, agreed to pay the debts of said execution defendant, but never became a party to said judgment in any manner whatever, and that said Pfeiffer has no other claim or title whatever.
The prayer of the pleading is that the pretended sale by the said sheriff be set aside and held for naught; that the plaintiff take nothing by this suit; that the defendant, The Shipman Coal, Mining and Manufacturing Company, be adjudged the owner of said property, and for all proper relief.
The affirmative reply admits that plaintiff claims title by virtue of the sheriff’s sale, and avers that the purchase by the defendant company of said property was for no consideration except the assumption of the debts of the said execution defendant; that for reasons set forth the defendant company is identical with said execution defendant; that defendant company was careless about attending the sale; that plaintiff attended the sale and *449 purchased the property in good faith, believing all the proceedings to be regular.
A counterclaim) under the code, is any matter arising out of, or connected with, the cause of action, which might be the subject of an action in favor of the defendant, or tend to reduce the plaintiff’s claim for damages. R. S. 1894, section 353 (R. S. 1881, section 350). It embraces both recoupment at common law and the cross-bill in equity. Woodruff v. Garner, 27 Ind. 4; Standley v. Northwestern Mut. Life Ins. Co., 95 Ind. 254.
It will be observed that the plaintiff in the present action was not the execution plaintiff in the proceedings which terminated in the sale of the property to him. So far as the record discloses, he was an entire stranger to the proceedings up to the time of the sale to him by the sheriff. The execution or judgment plaintiff is not a party to this action. If the pleading before us is a counterclaim, or a cross-action to set aside the sale, it seems to us that Samuel Abbott should be a party, so as to afford him an opportunity to defend the sale which is .here attacked. If the pleading recognizes the prima .facie validity of the sale, but seeks to set it aside on account of mere irregularities for which the appellee was not responsible, it appears to us that this would be a collateral attack upon the appellee’s title. If the sale was merely voidable, but not absolutely void, the appellants should have gone into court with proceedings to set it aside. The pleading may, however, be treated as a plea of property in the appellee, and if it discloses absolute ownership in him, it will be sufficient as an answer in bar, although the facts set forth may perhaps have been given in evidence under the general denial. Baldwin v. Burrows, 95 Ind. 81.
Anything xvhich will tend to defeat the plaintiff’s *450 claim of title, or the right of possession, in replevin, may be given in evidence under the general denial. C. Aultman & Co. v. Forgey, 10 Ind. App. 397.
We do not mean to decide that there may never be a case in replevin in which a counterclaim may be proper, as in cases of ejectment, for the recovery of real estate purchased at sheriff’s sale. Gilpin v. Wilson, 53 Ind. 443.
If the action were between the execution plaintiff and the defendant, a counterclaim of this character might be upheld, though it is by no means certain that the facts could not be proved under the general denial without, such plea. But in the present case, as we have said, the pleading, when considered as a cross-bill to set aside the-sale, must fail, as it introduces into the cause matter which is foreign to the subject of the complaint, though the same matter may be sufficient when pleaded as an answer in bar. Douthitt v. Smith, Admr., 69 Ind. 463; Standley v. Northwestern, etc., Life Ins. Co., 95 Ind. 254; Miller, Admr., v. Roberts, 106 Ind. 63.
We think the answer proceeds upon the theory that, the sheriff levied the execution upon the property of the appellant company, which was not the judgment defendant. Of course, if this were true the sale would be void. If the appellant company agreed to pay the debts of its-predecessor, this might be a good reason why Abbott, would have been entitled to a judgment against it, but it would not authorize a levy upon its property on a, judgment and execution against another corporation.
No cross-action or other pleading than the general denial would be necessary in such a case to avoid the-sale. It would be void in itself and would confer no title upon the purchaser. If, however, the appellant company was the same as the execution defendant, or if there was a consolidation of the two corporations under *451 the name of the appellant company, and the latter superseded the old corporation, assuming all its liabilities and succeeding to all its rights and privileges, a judgment and execution against the old corporation would bind the personal property of the new. Indianapolis, etc., R. R. Co. v. Jones, 29 Ind. 465; Cashman v. Brownlee, 128 Ind. 266; Louisville, etc., R. R. Co. v. Summers, Admr., 131 Ind. 241; Louisville, etc., R. R. Co. v. Utz, Admr., 133 Ind. 265.
Under the issues, it devolved upon the appellee to prove his title to the property by a preponderance of the evidence. The evidence disclosed that the Illinois and Indiana Stone and Coal Manufacturing Company was indebted to one Samuel Abbott, for labor, in the sum of $61.61, for which he obtained a judgment against said company, in the Fountain Circuit Court, October 8, 1892, including interest, penalty and attorney’s fees, in the sum of $141.61, and costs taxed at $18.20. On this judgment Abbott sued out an execution on October 17, 1892, directed to the sheriff of Vermillion county, who levied the same on 110 acres of land in said county belonging to the judgment defendant, which was sufficient in value to satisfy the judgment. The sheriff made two attempts to sell this property, but received no bidders, and the execution was returned unsatisfied.
In March, 1892, the Shipman Coal Mining and Manufacturing Company, one of the appellants herein, was organized under the laws of the State of Michigan, and there was evidence tending to show that its organization was for the purpose of succeeding the Illinois and Indiana Stone and Coal Manufacturing and Improvement Company, and to continue its business and succeed to its rights and liabilities, but there was no evidence that there was any consolidation of the two companies, nor was there any dispute that the two companies are dis *452 tinct and separate corporations, although it was a disputed fact whether or not both companies were composed of the same stockholders.
Shortly after the organization of the appellant company it purchased of the old company all its property, including that in controversy, and took possession of the same, and has had possession thereof ever since, except as ousted by the sheriff’s levy hereinafter mentioned, the consideration of the transfer being the agreement to pay all the debts of the old corporation amounting to about $80,000, and the actual payment thereof, except the debt of said Abbott, which in some way was overlooked or failed to be paid. On September 7, 1893, and after the organization of the appellant company and the transfer of such property, the said Abbott caused an execution to be issued on said judgment to the sheriff of Fountain county, who levied the same on the property in controversy on October 13, 1893, and advertised the property to be sold. We shall not undertake to enumerate the many irregularities which it is claimed attended the sale. Within thirty minutes after the hour when the sale was advertised to begin the appellee bought in the entire property for the price of $30, the value of which he now places at $325, and this is also the value fixed by the court upon the property, although there was evidence varying from $200 to $3,000.
The appellee did not take the property into possession after he had bidden the same in at the sale, nor did he pay the purchase-price for some hours afterwards, and before the appellant company had offered to the sheriff to pay the whole amount of said judgment, interest and cost, although no actual tender' was made at the time.
The evidence further shows that subsequently the appellants offered to the appellee the amount of his purchase, together with a liberal compensation for his time, *453 trouble, and expense, which he refused to take. The sheriff accepted the money to satisfy the judgment, except the $30 for which the property was sold to the appellee. Prior to the beginning of this action the appellant company made a formal tender to the appellee of $55 in gold coin, and kept the same in hand for him until suit was brought, and then paid it into court for the use of the appellee, where it still remains.
Filed Jan. 8, 1895.
We do not see how, under this evidence, the finding and judgment of the court can be upheld. As we have seen, there was no evidence of a consolidation of the two corporations or of a merger of the old into the new. The one corporation was organized under the laws of the State of Michigan. It is not shown in what State the other had its existence. The levy upon the property of the appellant corporation and all the subsequent proceedings thereunder were void, and the sale conferred no title whatever upon the appellee.
The appellants were entitled to a new trial.
Judgment reversed.