## HUNTER ET AL. *v.* MCLAUGHLIN.

PLEADING.—*Promissory Note.*—*Want of Consideration.*—To a suit brought by
an indorsee of a note payable in bank, a general answer of want of consideration,
and that such want of consideration was known to the plaintiff when he pro-
cured the assignment of the note from the payee, is sufficient.

SAME.—*Representations.*—*Opinion.*—An answer to a suit upon a promissory
note, alleging that the note was given in consideration of the assignment of a
patent right, that the payee exhibited letters patent and a model of the
machine patented, and claimed that the machine, if properly constructed,
would do its work well, etc., and that the defendant relied on the represen-
tations, and when the machine was properly constructed and fairly tested, it
failed to produce the result claimed for it, and was of no value, was held bad
on demurrer.

SAME.—As the answer did not show that the payee had ever made and used a
machine, made after the model and letters patent, or that he represented to
the defendant that he had made and used such a machine, the statements
made were nothing more than a mere expression of opinion, which, for aught
that appeared, the payee might have honestly entertained.

SAME.—*Cross Complaint.*—A cross complaint can only relate to the matters in
question in the original complaint.

From the Decatur Common Pleas.

*J. Gavin, B. W. Wilson,* and *J. L. Bracken,* for appel-
lants.

*S. Bonner* and *W. Morrow,* for appellee.

DOWNEY, J.—The appellant Hunter sued the appellee on
two promissory notes, made by the appellee, payable to the
appellant Lugenbell, in a bank, and indorsed by him to
Hunter, and also to foreclose a mortgage executed by the
appellee to Lugenbell to secure the payment of said notes.
The notes were dated the 13th day of November, 1866; one
of them matured in six and the other in twelve months after
date. There was a paragraph of the complaint on each of
the notes. A payment of six hundred and sixty-five dollars
was made on the note first maturing, on the 13th day of
February, 1867, by the appellee to Hunter, as alleged in the
complaint.

The answer was in several paragraphs, but only the first,
second, third, and sixth are in question.

Hunter *et al. v.* McLaughlin.

1. The first paragraph alleges that the notes were given without any consideration whatever, and that that fact was well known to the plaintiff when he procured the same to be assigned to himself.

2. The second alleges that the notes were given for the right to a certain pretended patent ditching machine, " Peter Lugenbell's Improved Rotary Ditching Machine," in and for certain territory in the state of Illinois,· and for no other consideration whatever ; that at the time of said sale to him of said pretended ditching machine by the said Lugenbell and the execution of the notes aforesaid, he, the said Lugenbell, claimed to have procured a patent therefor, and exhibited to him his letters patent, and a model of said machine, and that it was claimed by said Lugenbell for his said machine, and represented by his said letters patent and the model thereof by him constructed and exhibited as aforesaid, that said machine, when constructed according to said model and operated, would produce a certain useful result, to wit, that it would cut a ditch for draining purposes to any desired depth, by excavating the earth and carrying the excavated earth up and depositing it outside the ditch, and that said machine, in the use of the means in said model and letters patent specified without any addition to or subtraction therefrom, would produce the result above described ; that the defendant having no means by practical operation to ascertain whether a machine when so constructed would produce the result aforesaid, and relying upon the representations of said Lugenbell by himself and in his said model and letters patent, purchased the right to said·machine for the territory aforesaid, and gave said notes therefor ; that afterward, when said machine was constructed according to said model and letters patent, it did not produce said useful result; but, on the contrary, the defendant avers that when said machine was constructed in all respects agreeable and in conformity to said model and specifications in said letters patent, and the same was fully and fairly tested, it utterly failed to produce the result, and

was and is of no value whatever, and therefore said pretended patent is utterly void; all of which was well known to the plaintiff when he procured the assignment of said notes.

3.   The third paragraph, which is in the form of a cross complaint, and which is filed against Lugenbell as well as Hunter, alleges that Lugenbell was the owner of said invention and claimed 'to have a patent therefor, and knowing that it was of no practical utility, and before testing its utility by actual experiment, to impose upon the defendant and others his pretended improvement, constructed a small model, not intended for practical use, but made to sell, and exhibited this instead of a machine; that this model was well calculated to deceive men of ordinary experience who had not closely studied the principle with a view to its application to the work proposed to be performed by it; that Lugenbell, well knowing that the defendant had no experience in such things, that the plaintiff Hunter was the close neighbor of defendant, that the relations of defendant and said Hunter were of the most intimate and confidential nature, and that Hunter had considerable influence over defendant, that defendant had great confidence in the judgment and integrity of said Hunter, and designing to defraud and cheat the defendant by imposing his pretended improved patent upon him, conspired and confederated with said Hunter, who also well knew the truth of all said facts, and procured said Hunter by promises of great rewards as hereinafter named, to use his influence in procuring the defendant to purchase a right in his pretended patent to the territory hereinafter named; and in order more effectually to carry out their fraudulent design, said Hunter and Lugenbell conspired together and agreed that each one should have an interest in the sales made to the defendant; and having thus conspired together, and in order to gain the entire confidence of the defendant and make him believe that said pretended improvement was valuable and useful, and would sell for large profits, the said Hunter represented to the defendant that he had entire con-

fidence in the patent; that it was the best patent in the world, and that they could soon make a fortune out of it, and that he would enter into partnership with the defendant in buying territory, concealing from the defendant the, combination between him and said Lugenbell, who was his co-conspirator in the fraud, and by his false pretences, representations, and pursuasions induced the defendant to go in with him in buying the right to said pretended improvement for the states of Iowa and Michigan, at the enormous sum of two thousand dollars for each state, and then proposed to defendant that he, defendant, might have his choice of states, and that they would each give his own note to Lugenbell for two thousand dollars, and have the right to said pretended improvement assigned to them separately. It is then alleged that the defendant relying, etc, chose the state of Michigan, gave two notes of one thousand dollars each, and received an assignment for said improvement in said state; that Lugenbell is still the holder of one of said notes, and of a note for two hundred and twenty dollars given to him in lieu of the other, and has instituted suit thereon in this court which is now pending; that said Hunter designing to further cheat and defraud the defendant continued to exaggerate and portray to the defendant the value and utility of said pretended improvement upon every occasion when they met, and seeking every opportunity to excite the defendant's feelings and influence his judgment upon the subject, and pretended that he was very anxious to buy more territory, and having thus secured the defendant's entire confidence, and knowing that the defendant was relying solely on his judgment, said Hunter, about two weeks after the first trade came to the defendant and represented that the state of Illinois was the best state in the north-west in which to sell said pretended improvement; that it was worth twelve thousand dollars, and he would join with the defendant in paying said sum for said state, and falsely pretended that said Lugenbell would not sell to him (Hunter), and procured the defendant to go to Lugenbell and see what he could buy the state for.

The defendant, not mistrusting the falsehood and deception of said parties, called upon Lugenbell to know what he would take for the state of Illinois, and was answered that he would not part with all the said state for any sum, but might be induced to part with one-half of said state for six thousand dollars. A few days afterward Hunter again called on defendant and told him that Lugenbell had concluded to sell the state of Illinois for ten thousand dollars; that it was very cheap, that he would make a fortune out of it, that it was worth one hundred thousand dollars; and his influence and pursuasions induced the defendant to go in with him and buy said state. Whereupon the defendant and Hunter started to Greensburg to see Lugenbell and close the trade, said Hunter being on horseback, and the defendant in a buggy. Said Hunter arrived at Greensburg first, and when the defendant came to Greensburg he found Hunter and Lugenbell together, and was informed by Hunter that Lugenbell had backed out and refused to sell said state for said sum. Whereupon Lugenbell told the defendant that inasmuch as he had promised him half of the state at six thousand dollars, he would still let him have it. The defendant declined to take it then, and asked a week to think about it. The same day Hunter again called on defendant and told him that Lugenbell wanted to see him at once, and unless he came at once and closed up the trade that he, Lugenbell, would not let him have it; that he was induced by the pursuasion of Hunter to go again to Lugenbell and finally close the trade at six thousand dollars, for one half the state of Illinois, for which he executed the notes sued on. And to further cheat and defraud the defendant, and to cover up their wicked designs and get the advantage of the defendant, the said plaintiff and Lugenbell inserted in the contract assigning to him said patent right, that the defendant trusted and relied upon his own judgment and not upon the representations of the patentee or his agents, etc. It is further alleged that soon after this the plaintiff and Lugenbell, knowing the fraud, etc., so practised upon the defendant, that

the improvement was worthless, etc., and knowing the influence they had obtained over the defendant, came to him and again assured him that all they had told him about said machine was true, but that some reports had been circulated about the trade with the defendant, which tended to make the notes he had given to plaintiff and Lugenbell uncurrent in the community, and asked him, as a personal favor to them to sign a certain paper which they had prepared, which paper is in the possession of the plaintiff, the substance of which is, that the defendant had purchased said patent right on his own judgment, and that he had no offset against the notes; that at the time of his signing said statements he was wholly ignorant that the machine was worthless, and of the fraudulent combination that had been formed by the plaintiff and Lugenbell to induce him to purchase the same, but still relied on the good faith of the plaintiff and Lugenbell to make good to him all their representations of the value of said machine. He charges that the sale of the state of Iowa to the plaintiff by Lugenbell was all a sham, and made by them to influence him, and that as soon as they had induced him to purchase, the trade was rescinded for said state and the notes and assignment of said right at once destroyed and cancelled; that the pretence of the plaintiff, that he wanted to form a partnership with the defendant and buy the state of Illinois, was wholly false, and was so designed and understood between the plaintiff and Lugenbell to deceive the defendant and induce him to make said trade; that said pretended improvement and patent was and is of no value or practical utility; that the same, when built and constructed in accordance with the specifications of said patent, would not produce the result claimed for it in said letters patent, all of which was well known to said plaintiff and Lugenbell. It is further alleged that the said Lugenbell paid the said Hunter three thousand dollars for his influence, falsehood, and deception in procuring the defendant to enter into said contract. By reason of which fraud he alleges he has been damaged as follows, to wit: That before he discov-

ered the fraud and deception practised upon him by the plaintiff and Lugenbell, he paid to said Hunter on the notes' procured as aforesaid eleven mules, valued at six hundred and sixty-five dollars, and he paid to Lugenbell two hundred and eighty dollars in cash on said notes ; that he was put to an enormous expense in constructing a machine under the direction of the plaintiff and Lugenbell, in the sum of three hundred and sixty-three dollars and forty cents ; that he expended a large sum in testing the utility of said machine and trying to introduce it to the people of the territory so purchased as aforesaid, in the sum of two hundred and seventy-eight dollars and twenty cents, a bill of particulars of which he files. He further alleges that as soon as he fully tested the utility of said machine and found it to be wholly worthless, and as soon as he discovered the wicked combination, fraud, and deceit of the plaintiff and said Lugenbell, and the evidence by which the same could be established, he abandoned said sale and contract and rescinded the same, and notified said plaintiff and said Lugenbell of his intention to rescind the same, and offered to them a reassignment of said worthless patent, and every thing of value that he received under said contract, and demanded his notes executed, and the cancellation of the said mortgage, and the repayment to him of the amount paid on the notes as aforesaid, and demanded pay for his expenses and damages as aforesaid, which cancellation, rescission, repayment, etc., the plaintiff and said Lugenbell wholly failed and refused to do and perform, and he now brings into court the written transfer of said pretended patent to him for the state of Michigan, and certain counties in the state of Illinois, and offers to surrender the same.

The prayer is, that Lugenbell be made a party to this cross complaint, and be required to answer the same as well as the plaintiff, Hunter ; that, upon a final hearing, the contract of sale to this defendant and the notes and mortgage executed in pursuance thereof, that is, the notes sued on in this case and the notes now in the hands of the said

Lugenbell as aforesaid be rescinded, cancelled, and declared null and void, and that the same by the order of the court be surrendered to this defendant; that he have judgment against the plaintiff and Lugenbell for the amount of money paid them on said contracts, and his expenses and damages as above set forth, in the sum of three thousand dollars, and all other proper relief.

6. The sixth paragraph is also made a cross complaint, and alleges that Lugenbell claimed to be the inventor of said machine and the owner thereof, and that he had procured a patent therefor ; that the patented ditching machine was not new and useful, but, on the contrary, was wholly useless and of no value whatever. It then alleges the confederation and conspiracy between Lugenbell and Hunter, the making of the contracts, the ignorance and confidence of the defendant, and the fraud and deception of Hunter and Lugenbell, in substantially the same form as in the third paragraph, the pendency of the other action in the same court, by Lugenbell against the defendant, and prays judgment as in that paragraph.

There were joint and several demurrers to those paragraphs of the answer by Hunter and by Lugenbell, which were overruled, and there was an exception by the plaintiff and by Lugenbell. The first, second, third, and fourth assignments of error question the correctness of these rulings of the court.

There can be no question, we think, as to the sufficiency of the first paragraph of the answer. It is a general answer of want of consideration, and it has been held that such an answer is sufficient without any further or more particular statement; that there is nothing more particular to be stated. When it is said that there was no consideration, all has been said that can be said. It alleges that the want of consideration for the notes was known to Hunter when he procured the same to be assigned to him. This is sufficient to show that he was not an indorsee in good faith and without notice of the defence to the action on the note.

Without this allegation, as the notes are payable in bank, the paragraph would not have been good.

The second paragraph of the answer states, 1. That the notes on which the suit was brought were given in consideration of the assignment of a patent right in certain territory. 2. That the payee exhibited to the maker letters patent and a model of the machine, and "claimed" that the machine when properly constructed would cut a ditch for draining purposes, etc. 3. That the defendant had no means of ascertaining whether it would do so or not. 4. That relying upon the representations of the payee and his model and letters patent, he purchased the right and gave the notes therefor. 5. That afterward when the machine was constructed according to the model and letters patent, and fairly tested, it would not produce the result claimed for it, and was and is of no value whatever. Therefore, it is claimed, the patent is void. 6. That these facts were known to the plaintiff when he took the assignment of the notes in question.

In our opinion, this paragraph of the answer is fatally defective. There is no warranty alleged, and as to representations, it is only stated that the payee "claimed" that the machine, when properly constructed, would accomplish certain results, etc. In *Kernodle* v. *Hunt,* 4 Blackf. 57, the third plea was fully as strong as the paragraph in this case, and was held good in the circuit court. But this court held it insufficient. STEVENS, J., in the opinion of the court, says: "We will examine the third plea separately. This avers, that the consideration for which the promissory notes were given was a patent right for a certain grist mill, etc.; and that the vendors represented that the said patent mill was a good, useful, and valuable improvement for grinding corn, etc., when in truth it was of no value, etc.; and that he the defendant confiding in that representation, purchased, etc. These averments are entirely insufficient. They set out a consideration, and admit that that consideration was received, and was, has been, and is, without interruption, possessed and enjoyed by the vendee; that he got all he contracted for, and that the

title is good. No defects or insufficiencies either in title or anything else connected with the consideration are complained of; there is no charge that any thing was concealed from his knowledge in any way. The complaint is, that the vendor represented it to be useful and valuable when it was not, and that he, confiding in that representation, purchased. These allegations are insufficient; no material issue can be made upon them; what one man may esteem very valuable, another may deem worth nothing. There is no averment that the vendee was ignorant of the value at the time of the purchase, and was therefore deceived. But if it were so averred, that would not of itself be sufficient." Various authorities are cited. The court further says: "The question in these cases is, did the vendor deceive the vendee by his false and fraudulent representations respecting some material fact, about which the vendee could not by common and ordinary diligence inform himself, in relation to the quality, the quantity, or the performance, etc., of the thing sold? As if the vendor, in this case, had falsely and fraudulently represented to the vendee, that said patent mill would grind one hundred bushels of grain in a given time, or that it would make good meal and flour, etc., when in truth all these statements were false; and the vendee could not by ordinary diligence inform himself, and had relied solely on the honesty and integrity of the vendor. In such a case there would be something on which to form a material issue. The plea, however, contains no such allegations."

As it is not stated in the answer in question that Lugenbell had made and used, or stated to McLaughlin that he had made and used, a ditching machine according to the model and specifications in the patent, we must presume that no such thing had been done or was stated by Lugenbell, but only, as stated in the answer, that Lugenbell showed him the model and the letters patent, and claimed that the machine, when constructed, would do so and so. This must, therefore have been nothing more than a mere expression of opinion by Lugenbell, and could not have been otherwise

understood by McLaughlin. Lugenbell does not seem to
have concealed any fact from McLaughlin, or stated any
thing as a fact, but simply claimed that the machine, when
constructed, would perform in a particular manner, which,
we think, was only the expression of an opinion, which, for
aught that appears, he honestly entertained. Regarding this
paragraph of the answer, then, as setting up neither fraud nor
a warranty, the language of this court in *Hardesty* v. *Smith*,
3 Ind. 39, is in point: "The simple fact that the improve-
ment in the lamp was of no utility, is not sufficient to bar a
suit on these notes. Parties of sufficient mental capacity for
the management of their own business have a right to make
their own bargains. The owner of a thing has the right to
fix the price at which he will part with it, and a buyer's
own judgment ought to be his best guide as to what he
should give to obtain it. The consideration agreed upon
may indefinitely exceed the value of the thing for which it
is promised, and still the bargain stand. The doing of an
act by one at the request of another, which may be a detri-
ment or inconvenience, however slight, to the party doing
it, or may be a benefit, however slight, to the party at whose
request it is performed, is a legal consideration for a promise
by such requesting party. So the parting with a right, which
one possesses, to another, at his request, may constitute a
good consideration. And where one person examines an
invention to the use of which another has the exclusive right,
and, upon his own judgment, uninfluenced by fraud, or war-
ranty, or mistake of facts, agrees to give a certain sum for
the conveyance of that right to him, such conveyance forms
a valid consideration for such agreement. The judgment
of the purchaser is the best arbiter of whether the thing
is of any value, and how great, to him. The chance he
may acquire of gain, the power he may obtain of prevent-
ing any other person from attempting to introduce the use
of the invention in competition with some rival one such
purchaser may, at the time, own the right to, or some other
motive, may induce him willingly to pay a sum of money,

Hunter *et al. v.* McLaughlin.

in such case, for that which, in the end, may prove valueless in itself. On the other hand, as we have already said, loss, or trouble, or inconvenience, or expense, on the part of the grantor, or seller, without any profit to the buyer, is a good consideration. So the simple parting with a right which is one's own, and which he has the right to fix a price upon, must be a good consideration for a promise to pay that price. In such cases, the purchaser *gets a something*, and he is estopped by the exercise of his own judgment, uninfluenced by fraud, or warranty, or mistake of facts, at the time, to afterward say it was not worth to him what he agreed to give."

In *Gatling* v. *Newell*, 9 Ind. 572, this court said, in deciding a patent right case: " It is not, however, every erroneous representation that will entitle a party to such rescission. The representation must be as to a fact, or facts, and go to a material matter. It must be one on which the party to whom it is made has a right to, and does rely. It it be mere matter of opinion, or exaggerated, general representation of quality, capacity, or usefulness, or be as to a matter equally open to the knowledge of both parties, or be one not relied on, the representation, though untrue, will not vitiate the contract. Especially will such be the case, where the parties stand mentally upon equal footing, and in no fiduciary relation. The law will not relieve a man, thus circumstanced, for voluntarily neglecting to exercise common sense and judgment, if he has them." Many authorities are cited in support of this doctrine.

The answer under consideration does not question the novelty of the invention. Had it alleged that the invention was not new and useful, it would, under many decisions of this, and other courts, have been a good defence to the action. *Johnson* v. *McCabe*, 37 Ind. 535, and cases cited. In our opinion, the court should have sustained the demurrer to the second paragraph of the answer.

The next question relates to the sufficiency of the third

paragraph of the answer, which is, in form, a cross bill, and which, as we have seen, sets up the facts attending the transaction out of which the notes in question grew, and also the transaction which resulted in the giving of the notes on which Lugenbell had sued McLaughlin, with great particularity. It seems to us that it cannot be successfully questioned but that the facts stated show that a fraud was practised upon McLaughlin by Hunter and Lugenbell, resulting in the giving of the notes held by Hunter, and also the notes previously executed, held by Lugenbell. But the question is, could the cross bill be sustained against Lugenbell under the circumstances? The notes held by him were executed on the 23d day of October, 1866, and he had commenced an action thereon, as shown by the cross complaint, which was pending when it was filed. These notes were given for the sale of the state of Michigan. The notes held by Hunter, on which this action was commenced, were executed on the 13th day of November, 1866, and were given for half of the state of Illinois. We think this question is presented by the demurrer of Lugenbell to the cross complaint. The ruling of the court on that demurrer is one of the errors assigned. We are of the opinion that there was not such a connection between the two contracts as to warrant the filing of a cross complaint against Lugenbell, in the suit of Hunter, and the bringing into that case the matters in litigation in the suit which had been brought by Lugenbell against McLaughlin. A cross bill is filed "touching the matters in question in the original bill." Story Eq. Pl., sec. 389; Mitford Ch. Pl. 80; *Cross* v. *De Valle,* 1 Wal. 1; *Frear* v. *Bryan,* 12 Ind. 343.

The sixth paragraph, which is also a cross complaint, must be held bad for the same reasons which have led us to hold the third bad.

Other questions are presented which arose during the trial, but those of them which are not decided by our rulings on the demurrer need not be considered, as, for the reasons already given, the judgment must be reversed,

and on another trial the same questions may not arise.

The judgment is reversed, with costs, and the cause remanded, with instructions to sustain the demurrers to the second, third, and sixth paragraphs of the answer, and for further proceedings.