SACHLEBEN, *Appellant*, v. HEINTZE.

Division One, November 6, 1893.

1. **Code Practice**: LEGAL AND EQUITABLE REMEDIES: NOTE: MISREPRESENTATION. Under the Missouri code, recognizing and applying legal and equitable rights and remedies in the same proceeding, the maker of a note may avoid it by showing that its execution was materially induced by an innocent but substantial misrepresentation of the other party thereto.

2. **Note**: MISREPRESENTATIONS: ESTOPPEL. Misrepresentations touching the consideration of a note do not constitute a defense to it when the maker, at the time of delivering it, is fully advised of the true state of the facts respecting which the representations were made.

3. ——: ——: ——. He who takes the benefit of a transaction (with full knowledge of its true nature) must bear its burdens.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

REVERSED AND REMANDED.

*H. A. Haeussler, E. J. O'Brien* and *C. V. Scott* for appellant.

(1) Defendant's answer does not state facts sufficient to constitute a defense to the notes sued on, and

the proof is not broader than the answer. (2) It requires the same character of proof on defendant's part to sustain his defense here as it would to maintain an action to recover back money actually paid, had he paid the $5,000 in cash instead of giving the notes sued on. (3) Statements made by a seller of a speculative property at the time of the contract of sale, concerning his opinion or judgment of the productive quality of the property or its value, if they turn out untrue, are not necessarily such fraudulent statements as will support an action for damages sustained by reason thereof, or authorize a court of equity to rescind a contract of sale of such property. *Development Co. v. Silva,* 125 U. S. 247; *Farrar v. Churchill,* 135 U. S. 609; *Anderson v. McPike,* 86 Mo. 293. (4) Representations as to value or productive capacity, etc., of mines, patents, etc., do not amount to warranties. *Tuck v. Downing,* 76 Ill. 71; *Development Co. v. Silva, supra; Joliffe v. Collins,* 21 Mo. 338. (5) The representations must have been relied on. If the purchaser investigates for himself and nothing is done to prevent his investigation from being as full as he chooses, he cannot say he relied on the representations of the vendor. Bigelow on Fraud, 87; *Farrar v. Churchill, supra; Development Co. v. Silva, supra; Anderson v. McPike, supra.* (6) The notes in suit being renewal notes given long after defendant had full opportunity to ascertain the capacity of the machines provided for by the contract, and the truth or falsity of the alleged representations, defendant is estopped from asserting such representations as a defense thereto. (7) The two instructions given at the instance of defendant were erroneously given; they do not state the law as applicable to facts correctly. (8) The instructions given by the court of its own motion are clearly erroneous, prejudicial to defendant, and the giving thereof

constitutes reversible error. (9) The court admitted improper and irrelevant testimony objected to by plaintiff, all supposed representations having been made by Crecelius long before contract was executed, nothing having been said about it when contract was executed, and nothing in contract about capacity of machine then in existence or those to be subsequently made. *Galpin v. Atwater,* 29 Conn. 93; *Sellew v. Noyes,* 20 How. 506; *Walker v. Maning,* 6 Iowa, 519; *Joliffe v. Collins,* 21 Mo. 338; *Helmacher v. Geike,* 56 Mo. 79. (10) Upon pleadings and evidence plaintiff was entitled to a judgment, and there should be judgment here for plaintiff.

*Lee & Ellis* for respondent.

(1) The amended answer of the defendant sets forth facts sufficient to constitute a defense to the notes sued upon. *Anstey v. Over,* 26 Mo. App. 665; *Dunn v. White,* 63 Mo. 181; *Dulaney v. Rogers,* 64 Mo. 201; *Pomeroy v. Benton,* 57 Mo. 531; *Bank v. Crandall,* 87 Mo. 208; *Wannell v. Kem,* 57 Mo. 478. (2) The proof introduced by defendant sustains the averments contained in the answer. (3) The representations and statements made by Crecelius, one of the joint owners with appellant of the letters patent, by way of inducement to the contract read in evidence, out of which the notes grew, were binding upon the appellant. 2 Wharton on Evidence, pars. 1192, 1197, 1198, and cases cited; 1 Parsons on Contracts [5 Ed.], p. 22. (4) The two instructions given at the instance of the defendant correctly state the law applicable to this case. (5) The instructions given by the court, of its own motion correctly declare the law in favor of the plaintiff. (6) The instructions given at the instance of the plaintiff, as modified by the court, were a correct state-

ment of the law applicable to the case. (7) Upon the plaintiff's own showing in this case he was not entitled to recover.

BARCLAY, J.—The action was begun March 4, 1889, upon seven promissory notes, all made by defendant to order of plaintiff, February 27, 1888, for various sums, aggregating $5,281, maturing at different periods (the longest being one year) after date.

The answer sets up, in substance, that the notes were given under a contract for the sale, to defendant and others, of an interest in a patent for a machine to manufacture barbed wire, and that defendant was induced to execute them by reason of certain false and fraudulent representations, the nature of which will appear further along.

The reply denied the new matter.

A trial by jury resulted in a verdict and judgment for defendant. Plaintiff appealed after the usual motions and exceptions.

The defendant took the affirmative at the trial, and from his own evidence showed this case.

Plaintiff and a Mr. Crecelius held U. S. letters patent for a barbed wire machine. Defendant and two others, engaged in the wire business, were brought into negotiations with those owners, with a view to the purchase of an interest in the patent and other rights under it. These negotiations culminated, May 23, 1887, in a written contract, signed by all the parties mentioned. Its general features are that, Sachleben and Crecelius transferred to defendant and associates (whom we shall hereafter for convenience call Heintze & Co.). "the sole * * * right to manufacture, sell and use machines constructed under * * * said letters patent, and to sell the product made by said machines," in consideration of $10,000, in several notes,

executed by the purchasers, individually, payable at various dates (the longest, nine months after May 23, 1887), and, also, of the payment to S. & C. of a royalty of ten cents on each hundred pounds of barbed wire, manufactured and sold by Heintze & Co., or their licensees, during a term of five years from the contract date, which royalty was guaranteed by H. & Co., to reach $85,000. It was also stipulated that, on or before October 23, 1887, H. & Co. would cause to be put up, and operated, not less than twenty of the machines described in the patent, and would "run the same to their full capacity, unless prevented by legal process or other unavoidable circumstances."

There were a number of other provisions respecting expense of litigating the validity of the patent, and a forfeiture of rights under the contract, in event of non-compliance with its terms; but they need not be copied here.

The notes of Heintze & Co. were delivered as called for in the contract. Two of them at six and nine months, respectively, were signed by defendant, Mr. Heintze, alone. They both were unpaid at maturity of the longer one, and the notes now in suit were issued to the plaintiff in renewal of them, February 27, 1888.

The misrepresentations, on account of which it is claimed these notes may be avoided, consist of alleged statements by Crecelius during the negotiations which led up to the contract. Putting them in the form most favorable to defendant (as appears by his own testimony), they amounted to this: that a certain machine, made after this patent and personally exhibited by Crecelius to defendant and his associates, could produce between two thousand, five hundred and three thousand pounds of barbed in ten hours, and that it had turned out two hundred and eighty pounds of wire in one hour.

These statements were first made thirty or forty days before the contract was signed. The parties were then at the shop of Crecelius, where defendant and his associates had gone to examine the machine. One of the defendant's party timed the running of the wire through the machine then, and the defendant said that he "saw it run about three-quarters of an hour; * * * the wire was all right and the barbs were all right; there was nothing hidden or concealed from us; * * * don't know that I asked a longer test to be made; Crecelius refused nothing about the running of the machine or anything about it that was asked him."

Defendant went three or four times to the shop to inspect the machine before signing the contract, declared that the former "was put in operation for us and kept in operation as long as we wanted it to run, until we had seen enough of it."

Defendant also took the opinion of Mr. Bennett, an attorney in New York, on the patent before closing the contract.

When the latter was finally executed, Heintze & Co. took possession of the first machine and proceeded to make the twenty new machines called for by their agreement. They were ready by October, 1887, and were immediately put into operation and kept running until February 8, 1889.

Defendant testified that these machines were subjected to a five days test under the most favorable conditions, and the highest output of each was from twenty-three hundred to twenty-four hundred pounds of wire a day of ten hours; and that the average of each was from twelve hundred to fifteen hundred pounds a day while in ordinary use. He and several other witnesses positively declared that the machines never reached the extent of productive capacity represented by Crecelius. But the twenty machines were neverthe-

less in use from October, 1887, until long after the renewal notes now in suit were given, February 27, 1888. Defendant distinctly stated that he "did not refuse to renew the notes," though he then "knew the machines were not making the wire, and so did the plaintiff."

The principal fact on which the result of this appeal depends, in the view we take of it, appears in many shapes in the testimony of defendant himself and of his associates. On the other side the plaintiff's evidence confirms those facts, besides furnishing further testimony tending to negative the alleged misrepresentations of the productive capacity of the machine.

At the close of the evidence, the trial judge gave a number of instructions and refused certain others, asked by plaintiff. On these rulings the issue here depends.

1. The instruction given for defendant, as to the effect of the alleged misrepresentations by Crecelius, did not call for a finding that he knew they were false when the statements were made. This, it is claimed, was error.

The precise legal essentials to maintain an action for deceit or a counterclaim for damages for such a cause of action have been the subject of recent discussion and difference among eminent masters of the law. *Derry v. Peek* (1889), 14 App. Cas. 337; 5 Law Quar. Rev. 410; 6 Law Quar. Rev. 72; *Montreal, etc. Co. v. Mihills* (1891), 80 Wis. 540.

This appeal does not require us to enter upon the disputed territory of that subject. The present is not an action for deceit, nor does the answer pray for damages over, as upon a cause of action for deceit. The answer sets up certain facts as a defense; and in our procedure defendant is entitled to whatever benefit they give, whether legal or equitable in nature.

It is a settled rule in equity that where a contract has been materially induced by an innocent but substantial misrepresentation by one of the parties, the adverse contracting party (subject to some qualifications hereafter touched upon) may avoid, that is to say rescind, the contract. Under our system of law, in which legal and equitable rights and remedies are recognized and applied in the same forum, a party who is brought into court to respond to a promise contained in a note may defend successfully by showing that its consideration has failed because of facts creating the equitable barrier to its enforcement just stated.

It will not be needful to go further into that branch of the subject in view of what follows.

2. The learned trial judge, among other rulings, refused an instruction asked by plaintiff, but added to it the words indicated below by italics, and then, over plaintiff's exceptions, gave it to the jury as modified, viz:

"If you believe from the evidence that the defendant, his associates and agents, *prior to the execution of the contract in question*, were given every opportunity to examine and test the machine then owned by plaintiff and said Crecelius, and were men understanding the barbed wire business; that they made frequent personal examinations and tests, and had others to do so for them and with them, and that Crecelius, in his conversations, told them *truthfully* what the machines had actually done, and what, in his opinion, others would do if made, *and that defendant made the notes and contract in question solely on his own knowledge, observation and judgment*, and that on this basis, and none others, were the notes given by the defendant, then the plaintiff is entitled to a judgment in this cause for the amount of the notes and interest."

It will be first noted that this instruction limits the opportunity to test the machine to a time "prior to the execution of the contract;" that is to say, prior to May 23, 1887, whereas the notes were not executed until February 27, 1888, during which interval defendant and associates had the most abundant opportunity to fully test the capacity of the first machine and of the new machines, and in fact were meantime running the machines constantly. Defendant asserts that he knew they did not come up to the alleged representations of Crecelius as to their capacity; nevertheless, instead of repudiating the contract when the first notes were both matured, he extended the enjoyment of its advantages, renewing his promise to pay the consideration (in the form of the new notes now in suit) and thereby extending for another year his use of the patent and the benefit of the rights which the contract gave, including the rights to manufacture and sell the product of the machines during that period. So that defendant, by his own account, signed the renewal notes with full knowledge of the falsity of the alleged representations.

The only fact, by the way, which is claimed to support the charge of falsity in the statement that the old machine had turned out two hundred and eighty pounds per hour, is in the inference to be drawn from the other fact that the new machines (stronger and heavier than the first) did not produce such results. Of that fact defendant admits the fullest knowledge; indeed that is the main point of his insistence. Yet it is plain, throughout his evidence, that all he knew at the trial, touching the untruth of the representations complained of, he also knew before he executed the notes in action.

One of the facts essential to defendant's case is that he had been materially induced to issue the notes

in suit by the misrepresentations.   If when he delivered the notes he was fully advised of the true state of affairs, of the capacity of the machines, how can it be justly claimed that the misrepresentations of another on that point misled him, laying out of view the question whether they amounted, in the circumstances, to anything more than a mere puff of the thing offered for sale?   [Compare *Hunter v. McLaughlin* (1873), 43 Ind. 38; *Bishop v. Small* (1874), 63 Me. 12; *Mooney v. Miller* (1869), 102 Mass. 217.]

Hence it is very clear to us that, whatever view be taken as to the nature of the representations, the instructions should, at least, have named the date of the execution of the notes, in this connection, and not the date of "the execution of the contract."

Defendant appears to have acted throughout on the assumption that the statements of Crecelius as to the capacity of the machine were to be treated as warranties; but that was a wholly erroneous view of his rights and the plaintiff's liability in the premises. The written contract contained no such warranty. Having acquired full knowledge of the truth, touching the subject matter of the contract, and of the alleged misrepresentations leading up to it, defendant's plain legal duty was, when the time to pay or extend his first notes came around, to repudiate the benefits of the contract if he did not propose to bear its burdens. *Railroad v. Row* (1840), 24 Wend. 74.   With full knowledge of the truth (as he now admits) he made the new notes and continued to reap the advantages of the original agreement.   In such a state of the case how can it be said that he was misled to his prejudice into making the renewal notes, whatever the fact may be in that regard as to the old notes.   The trial court certainly erred in the particular we have discussed.

Vol. 117—34

No instruction was asked by the plaintiff as to the general effect and sufficiency of defendant's evidence as a bar to the action, though we are asked to render judgment here in favor of plaintiff. This we are not satisfied to do on the record as now presented, but what we have written will dispose of the decisive points discussed in the brief, without particularly specifying them further.

The judgment is reversed and the cause remanded for such further proceedings as may be in harmony with this opinion. BLACK, C. J., BRACE and MACFARLANE, JJ., concur.