ELGIN JEWELRY COMPANY, Appellant, v.
WITHAUP & COMPANY, Respondent.

St. Louis Court of Appeals, May 22, 1906.

1. **SALES:** Misrepresentation of Quality: Notice. An order for
the purchase of jewelry provided that the purchaser agreed to
notify the seller within two days from receipt of the jewelry
"of every shortage or variance from the order." The failure
to give such notice did not preclude the purchaser, when sued
for the amount of the order, from showing that fraud was prac-
ticed upon him and that the goods were not of the *quality* or-
dered.

2. ———: ———: Evidence: **Parol Evidence to Vary Written
Contract.** Where the order in such case said nothing about the
quality of the goods, fraudulent representations made by the
salesman regarding the quality of the goods could be shown by
parol without violating the rule that parol evidence can not be
received to vary a written contract.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,*
Judge.

AFFIRMED.

*A. Mullinix* and *James Orchard* for appellant.

(1) The court erred in permitting the defendant to
testify as to the terms and conditions of the contract as
the whole matter was merged in the written contract.
Gooch v. O'Conner, 8 Mo. 391; State ex rel. v. Hashaw,
98 Mo. 358; Taylor v. Fox, 16 Mo. App. 527. (2) De-
fendant in this case could not rescind because he had
not complied with the terms of that part of the con-
tract which required him at once to examine the jewelry
and within two days notify the plaintiff by registered
mail of any shortage or variance. But on the contrary
waited for about seventeen days after the receipt of the

jewelry before he made any complaint, hence has no standing in court. Pratt & Co. v. Mercantile Co., 111 Mo. App. 96, 85 S. W. 134.

*W. P. Campbell* for respondent.

STATEMENT.—This is an action for the purchase price of merchandise sold and delivered by plaintiffs to defendants. The Elgin Jewelry Company is a partnership, of which the members are T. C. Loveland and J. L. Records. The principal places of business of that firm are at Iowa City, Iowa, and Elgin, Illinois. The defendants, F. L. and E. E. Withaup, compose a firm engaged in the drug and jewelry business in the city of Willow Springs, Missouri. A written order for the goods in controversy was given to a traveling salesman of plaintiffs in the spring of 1903. The goods were various articles of jewelry, such as cuff and collar buttons, scarf pins, shirt studs, ladies' blouse sets, chains, rings and hatpins. We will copy the order, except the list of goods:

"On condition that the purchaser complies with all the terms of this order at the time and in the manner stated hereon and promptly meets any obligations entered into with the Elgin Jewelry Company, uses ordinary diligence in the sale of these goods, will sell nothing at a less profit than is usually charged on jewelry and will make out and send to the Elgin Jewelry Company by registered mail at the end of every sixty days, an itemized report showing the goods on hand and the goods sold, the Elgin Jewelry Company guarantees that gross profits from the sale of the goods purchased herein shall average 33 1-3 per cent per year as above; provided the Elgin Jewelry Company will either buy all goods remaining on hands unsold and pay the original invoice price for sale or will pay by Chicago or New York draft a sufficient amount to make up the guarantee.

"*Terms of Payment.*—One-fourth of the amount due in three months, one-fourth in six months and two-fourths in twelve months, without interest. A discount of six per cent will be made for cash in ten days. The terms of credit above provided will only be allowed if acceptances payable to our order are given within ten days' from date of invoice; otherwise terms are cash fifteen days."

(Here follows list of the goods purchased, the prices of which amounted to $197.)

### WARRANTY.

"Any jewelry in this assortment failing to wear satisfactorily will be replaced by new articles free of charge if returned to us within five years."

### EXCHANGE PRIVILEGES.

"Any article not selling readily can be exchanged for different patterns or other articles in this assortment any time within one year from date of invoice and after compliance with the terms of settlement.

"The Elgin Jewelry Company is hereby authorized to issue a draft on the purchaser herein for fifty cents worth of jewelry to each one hundred persons whose name and address he may furnish them; said draft to be redeemed by him with goods furnished free for advertising proposed in the above order.

"The purchaser agrees to notify the Elgin Jewelry Company by registered mail within two days from receipt of said jewelry of every shortage or variance from the order, and a failure to so notify them shall be an estoppel from such claims.

"Elgin Jewelry Company,
    "Elgin, Illinois.

Date, ................., 190..

"Gentlemen:

On our approval of this order please deliver to us at your earliest convenience f. o. b. transportation companies, either at distributing point or at factory point, the above assortment of goods on terms and conditions herein set forth and no others (all of which I have read and found complete and satisfactory).

"P. O. Willow Springs, County, Howell, State, Missouri; name of customer, Withaup & Company; freight station same; salesman L. B. Jackson.

"Round show case free; old goods to be exchanged for additional goods not to exceed $25; all the advertising; two catalogues.

"(Signed) WITHAUP & Co."

The petition was in the usual form for the price of merchandise sold and delivered. In defense of the action the answer set up that the order was given by defendants at the solicitation of a salesman of plaintiffs; that defendants had not seen the jewelry, but relied wholly on representations the salesman made as to its grade, quality and value; that defendants told the salesman they did not desire to purchase any jewelry of low grade, but only plated jewelry of high grade; that no samples were exhibited, but in order to induce defendants to purchase, the salesman represented that the Elgin Jewelry Company was the jewelry department of the Elgin Watch Company of Elgin, Illinois, and that the jewelry he offered for sale was of a high grade, and in material, style, workmanship and quality, equal to any that could be obtained in the market for the prices charged; that defendants, relying on the truth of said representations, which were known by the salesman to be false, gave the order for the merchandise; that on receipt of the goods they were found to be a cheap and inferior grade of jewelry and priced to defendants at much more than similar jewelry could have been pur-

118 App—9

chased for elsewhere; that the Elgin Jewelry Company was not connected with the Elgin Watch Company in any way; that on discovering the facts regarding the false representations as to the character of the goods, defendants immediately notified plaintiffs by mail and offered to return the goods or hold them subject to plaintiffs' order; that defendants still hold them subject to plaintiffs' order and are willing and ready to return them when requested; that defendants have paid out freight charges on the goods to the amount of $5.65, for which sum they pray judgment. The reply was a general denial. The testimony for defendants tended to support the averment that they were induced to purchase the jewelry by false representations made by plaintiffs' salesman regarding the grade and quality of the goods, and that, when delivered, the articles were found to fall materially short of those representations. On the contrary, the testimony for plaintiffs is that the goods were first-class and of high quality. As to these matters issues of fact were presented for the jury's decision and the issues were submitted by the instructions the court gave. Defendants obtained a verdict and judgment for the amount paid by them as freight charges.

The written order for the goods executed by defendants contained a clause binding defendants to notify plaintiffs, by registered mail and within two days from the receipt of the jewelry, of every shortage or variance from the order and providing that a failure to so notify should be an estoppel against any claim. The order included a showcase, which did not arrive for several days after defendants received the jewelry. It was the purpose of defendants to exhibit the goods in the showcase and the testimony is that they had no other place for the jewelry in their store. For this reason the package of jewelry was not opened and examined until the arrival of the showcase, but was opened the day of its receipt and plaintiffs were notified immediately that the

jewelry did not correspond to the representations which had induced defendants to purchase, but was of an inferior quality, could not be made use of by defendants and would be returned. This notification was more than two days after the package had been received. On May 16th plaintiffs answered the notice, expressing surprise at its contents, declaring the goods were exactly as represented, calling attention to the clause of the contract providing for notice of any shortage or variance within two days from the receipt of the goods, and asserting that defendants were estopped for failure to comply with that clause, wherefore the goods would not be received by plaintiffs if returned. Since then defendants have retained the goods subject to plaintiffs' order and pending the present litigation.

GOODE, J. (after stating the facts).—The main defense is the failure to give notice of the defective quality of the jewelry within two days after its receipt. In our judgment that clause of the written order cannot be interpreted to mean that if the goods were not of the quality ordered, notice must be given within the stated time. The quantities of the different articles ordered were sent. Neither was there "a variance from the order." The variance was from the representations made by the agent. The natural interpretation of the clause is that if there was a shortage in the articles shipped or some of the articles sent were different from what had been ordered, notice must be given in two days; for instance, if scarf pins were shipped to defendants in place of shirt studs ordered by them. It is not to be supposed the parties contemplated that low grade jewelry might be substituted for high grade, thereby calling for a complaint from defendants. In other words, we think the contract did not intend that defendant should immediately notify plaintiffs if the former discovered, on receipt of the jewelry, that a

fraud had been practiced. The paragraph of the contract invoked by plaintiffs was intended to shut off reclamations on account of a shortage in the shipment or a discrepancy between the articles shipped and those ordered, unless the claims were preferred within the stipulated time. It ought not to be held to preclude a defense based on a rescission of the agreement because it was fraudulently induced. [Main v. Dearing, 84 S. W. (Ark.) 640.] We are cited to Pratt v. Mercantile Co., 111 Mo. App. 96, 85 S. W. 134, as supporting plaintiffs' contention. In that action the defense relied on was the breach of an express warranty, instead of a rescission for fraud. That is, the defense was rested on the agreement and not on its alleged invalidity. The purchaser of the goods had kept them in stock forty or fifty days and sold portions of them, before giving notice of their failure to comply with the warranty, though the contract required notice in five days. The failure of the Mercantile Company to perform the contract, was fatal to a claim for relief predicated on a breach of its terms by the other party and probably a delay of that length would have been fatal to an attempt to rescind.

Error is assigned because the court admitted testimony regarding the fraudulent representations of the salesman prior to the execution of the written contract. This testimony is said to vary the terms of the written order for the goods. The order says nothing about the quality of the jewelry and perhaps might be regarded as an incomplete memorandum of the agreement, so that proof of representations by the salesman regarding the quality and grade of the goods hardly would vary it. However, we do not understand the law to exclude oral evidence that the purchase of personal property was induced by fraudulent representations regarding its quality in actions for the price, even if there was a written order or bill of sale. In an action on the contract, or some warranty of it, for damages for a breach,

this might be the rule. But where the sale was rescinded for fraud and the rescission is interposed as a defense to an action for the price, testimony is received in proof of the fraud. [Leibke v. Methudy, 14 Mo. App. 65; Leicher v. Keeny, 48 Mo. App. 394; Sachleben v. Heintze, 117 Mo. 520, 24 S. W. 54; Thomas v. Beebe, 25 N. Y. 244; Mayer v. Dean, 115 N. Y. 556, 5 L. R. A. 540; 14 Am. and Eng. Ency. Law, 199; 1 Elliott, Evidence, sec. 593.] We put our decision on that ground.

Those instructions requested by plaintiffs which the court refused, were drawn on the theory that defendants were estopped to interpose a defense, because of their failure to give notice of the defective quality of the goods within two days after they were received. They were properly refused. Appropriate instructions were given submitting the grounds of recovery on which plaintiffs had the right to rely.

The judgment is affirmed. All concur.