WILLIE WINTER, by THOMAS R. SMITH, Curator, Respondent, v. KANSAS CITY CABLE RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 22, 1897, and January 10, 1898.

| 73 | 173 |
|----|-----|
| d79 | 62 |

| 73 | 173 |
|----|-----|
| 85 | 428 |

| 73 | 173 |
|----|-----|
| s160s | 159 |

| 73 | 173 |
|----|-----|
| 91 | 352 |

| 73 | 173 |
|----|-----|
| 93 | 4193 |

1. **Evidence:** PRINCIPAL AND AGENT: DECLARATIONS OF AGENT. *Per* SMITH, P. J.: The declarations of an alleged agent can not be received against the principal unless the agency is established.

Winter v. K. C. Cable R'y Co.

2. **Settlement:** MISREPRESENTATION: CURATOR AND PROBATE COURT: MISTAKE. *Per* SMITH, P. J.: Where a curator and a probate court are fully advised of every fact material to a full and fair consideration of the settlement of a claim in favor of the ward and assent to such settlement, it can not be set aside as being induced by a misrepresentation or on the ground of mistake.

3. **Judgment:** RELEASE: EQUITY: STATUTE: PROBATE COURT. The acknowledgment of satisfaction on the margin of the record required by the statute is not a contract but a mere acknowledgment of payment yet not conclusive; and the probate court, in making an order for the compromise of a claim of a ward, is presumed to intend such quittance of the judgment as is provided by the statute; and the fact that the curator attached a scroll to his signature will not estop the ward from impeaching the acknowledgment. SMITH, P. J., holds such satisfaction a release under seal, the consideration of which can not be inquired into.

4. ——: ——: ——: ——: SEAL: CONSIDERATION. Equity always requires an actual consideration and permits the want of it to be shown notwithstanding a release may be under seal, and section 2090, Revised Statutes 1889, permits an inquiry into the consideration of sealed instruments. SMITH, P. J., holds that the release in controversy in this case is not subject to the above rule.

5. ——: PAYMENT: CONSIDERATION. The payment of a part of a liquidated debt will not discharge the whole even if expressly made for that purpose. SMITH, P. J., holds the rule not applicable to the release in controversy, the seal of which conclusively imports a consideration.

6. **Infants:** COURTS: TECHNICAL RULES: FAIRNESS. Where the rights of an infant are involved courts will not search for technical rules to sustain transactions which are not characterized with the strictest fairness.

7. **Judgment:** RELEASE: CONSIDERATION. *Held,* on a review of the facts in this case that there was no consideration to support the satisfaction of the judgment. SMITH, P. J., holds there was.

8. ——: ——: EQUITY: RESCISSION: TENDER. One attempting to rescind a transaction on the ground of fraud is not required to restore that which in any event he would be entitled to retain either by virtue of the contract sought to be set aside or of the original liability.

*Appeal from the Jackson Circuit Court.*—HON. C. L. DOBSON, Judge.

AFFIRMED AND CERTIFIED TO SUPREME COURT.

*Karnes, Holmes & Krauthoff* for appellant.

No briefs.

*Thomson & Wilcox* and *T. J. Porter* for respondent.

No briefs.

SMITH, P. J.—This is a suit in equity. For a proper understanding of the questions presented for decision, no better general statement of the case can be made than is to be found in the allegations of the petition which are as follows:

"Plaintiff says that Thomas R. Smith is the duly appointed and legally qualified curator of the estate of said Willie Winter, a minor under the age of fourteen years. Said Smith was appointed curator of said estate January 29, 1890, by the probate court of Buchanan county, in which county said minor then resided. Defendant is a corporation duly incorporated. That the estate of said minor then consisted of a judgment of the circuit court in and for Jackson county, Missouri, sitting at Kansas City, for the sum of $5,000 against said defendant, rendered on due service and dated April 22, 1886, in favor of said Willie Winter, by his next friend, D. R. Stevens. That on the second day of January, A. D. 1890, said judgment was affirmed by the supreme court of the state of Missouri, and no other proceedings to reverse or modify or in any way affect the validity of said judgment have been commenced or prosecuted. The said Smith had no connection with nor personal knowledge of the litigation to procure said judgment or of the appeal to the supreme court to reverse the same, as said proceedings on behalf of said minor were conducted wholly by said next friend.

PLEADINGS.

"On or about the 17th day of March, A. D. 1892, at St. Joseph, Missouri, said Thomas R. Smith was approached by defendant's agent, whom said Smith at the time supposed and believed to be the attorney for said Willie Winter. That he was informed by said agent that said judgment was in litigation of a tedious and complicated nature and that defendant was willing to pay the sum of $4,500 in settlement of said judgment. Relying upon the representations so made as aforesaid, said Smith the same day made application at the February term, A. D. 1892, to the probate court of Buchanan county, for and procured as order authorizing said curator to accept said sum in satisfaction of said judgment. And on the next day, March 18, 1892, at Kansas City, Missouri, said Smith accepted from defendant said sum and entered on the margin of the record of said judgment satisfaction in full thereof as curator of said estate. Said judgment, when so satisfied, principal and interest, amounted to the sum of six thousand, seven hundred and seventy ($6,770) dollars exclusive of costs. Thereafter, at the same term of said court, on due notice to defendant, plaintiff made application to have said order of said probate court authorizing said settlement set aside, which order said court made during said term in the following words and figures, to wit:

" 'In the probate court within and for said county. At the February term, 1892, on this 7th day of May, 1892, during the session of said court, among other things had and done, was the following, to wit:

" 'In the matter of the estate of Willie Winter, minor. Now on this day the motion of Thomas R. Smith, public administrator of Buchanan county, Missouri, in charge of the estate of said minor, to set aside an order of this court heretofore made, ordering and directing a compromise of a judgment against the

Kansas City Railway Company, coming on to be heard, and it being shown to the court that due notice of the hearing of said notice has been served on said company, the same is submitted to the court on the evidence offered, and it appearing to the court that the order of this court heretofore made at this term on the seventeenth day of March, 1892, directing the public administrator in charge of said estate to accept $4,500 in full settlement of a judgment against the Kansas City Cable Railway Company, was made on a mistake of facts as to the amount due on said judgment and as to litigation in relation thereto then pending, and in reliance by said administrator upon the representations of said railway company, which representations were not true, and it now appearing that said judgment was final, that the same with interest amounted to about $6,800 instead of $5,000 as represented, and that said railway company and its securities, who were and are liable therefor, are solvent, and it further appearing that pursuant to said order of this court, that said administrator accepted said sum of $4,500 of said company and entered satisfaction thereof in good faith by mistake as aforesaid, it is now ordered that said order directing a compromise of said judgment be and the same is now hereby set aside; to the end that the same shall not prevent other and further proceedings for the collection of the balance remaining due and unpaid on said judgment. And that said administrator be and he is now here ordered to enter a credit on said judgment for said sum of $4,500 as of the date of receipt thereof, instead of a satisfaction in full of said judgment.'

"Plaintiff says that said settlement of said judgment was made on a mistake as to the facts, relying on the representations of defendant as aforesaid and

without any consideration whatever. Said judgment is unpaid and, except as herein stated, in full force and effect.

"Wherefore plaintiff prays that said settlement of said judgment and the aforesaid satisfaction of the same of record may be canceled, declared null and of no effect, that said $4,500 may be applied on said judgment as part payment. And that judgment be rendered against defendant and in favor of plaintiff for the balance due on said judgment, to wit, the sum of twenty-five hundred eighty-three and 30-100 dollars and interest from the date of the filing of this petition."

The answer was a general denial.

The decree in the court below was for the plaintiff and defendant has appealed.

I.   The plaintiff, to maintain the issue in his behalf, was permitted, against the objections of defendant, to prove certain declarations of Vinton Pike, on the assurance given by the defendant that he would later on connect Pike with defendant in the capacity of attorney or agent. The objectionable declarations of Pike, just referred to, were those made by him to the curator and Mr. Carolus, and which the testimony of the two latter tended to prove.

EVIDENCE: principal and agent: declarations of agents.

The curator testified that Pike told him that he believed the best thing to do was to accept the $4,500 offer of settlement made by the defendant and to procure an order of the probate court authorizing the same; that the defendant was not known to be perfectly safe; that there might be trouble in getting the $5,000; that defendant would not settle it, perhaps, without being forced, and that litigation would eat up the amount. These and other similar declarations made by Pike to the curator respecting the signing of the

paper, requesting that the probate court, by an order, authorize a settlement of the judgment and the subsequent occurrences connected with the curatorship, were testified to by the curator.

Carolus testified that Pike told him that plaintiff resided in Buchanan county and had a judgment against defendant for $5,000. He said defendant had no objection to paying the money but wanted to pay it to a proper guardian; that there were proceedings to have a guardian appointed in Kansas City, etc.; that when Pike received notice of the motion to set aside the appointment as curator, that he (Pike) told him (witness) to resist the motion when it came up; that he (witness) asked Pike to assist him but the latter refused, saying the defendant did not want to be known in the matter; that defendant was tired of certain lawyers bringing suits against them and wanted to give them as much trouble as they could and to wear them out; that Pike sent for witness and told him that there was a proposition made by defendant to compromise the judgment which had been affirmed by the supreme court, but that the defendant would litigate it considerably; that there had been an execution and there would be a great deal of litigation; that he thought it would be advantageous to plaintiff to compromise the matter and for him to see the curator and talk over the matter with the probate judge. He further told him (witness) that the litigation would amount to a great deal more than the difference between the amount of the offer and that of the judgment; that he informed the witness in confidence that defendant was not as solvent as Thompson, the lawyer who obtained the judgment, thought it was; that the possibilities being that the judgment would not be made at all; that in view of all this he thought it advisable to compromise the judgment. He further testified that at the time

Pike requested him to hunt up the plaintiff that he (Pike) told him that plaintiff's stepfather was a drunkard living in Kansas City and that proceedings had been set on foot down there to have a guardian appointed, and that plaintiff's estate would be so manipulated that the stepfather would get hold of it, and also that the attorneys who had obtained the judgment were trying to rob the plaintiff's estate by getting one half of such judgment; that the plaintiff's interest required the appointment of a guardian so as to compel the attorneys to come and sue for their fees, where they could only obtain a reasonable allowance for their fees; and that Pike told witness that he represented the defendant from the beginning. These, with other declarations of Pike, were testified to by the witness.

It is proper to here state that Pike, in his testimony, specifically denied that he made either or any of the declarations to which the curator and Carolus testified.

In vain have I searched the record for the assured evidence that was to establish the existence of the relation of attorney or agent between Pike and defendant. The uncontradicted testimony of Pike and Lucas, the latter the general attorney for the defendant, was to the effect that the former was not employed by defendant to act for it to procure the appointment of the Buchanan county curator, nor to effect a settlement of the judgment. Whatever inferences there might have been drawn from the circumstances proved by the testimony of the curator and Carolus are rebutted by the negative testimony of Pike and Lucas.

It therefore follows that the testimony of the curator and Carolus as to the declarations of Pike should not have been admitted, or if admitted on the plaintiff's assurance the same should have been subse-

quently stricken out when it appeared that the plaintiff was unable to make good his assurance.

II.　The plaintiff assails the validity of the satisfaction of the judgment on three distinct grounds, namely, *first*, that it was procured by fraud; *second*, that it was the result of mistake; and *third*, that it was wholly without a supporting considera-

FACTS.

tion.　If either of these grounds find substantial support in the testimony contained in the record, then the decree must stand; otherwise not.

If we exclude from consideration, as we must, the declarations of Pike, already mentioned, it then remains only to consider whether the representations, contained in the application for leave to settle the judgment which was prepared by the defendant and signed by the curator, and presented by him to the probate court, were false and fraudulent, and if so, whether the satisfaction of the judgment was induced thereby.　It appears from the testimony that in the latter part of 1889, or early part of 1890, defendant's said attorney Lucas mentioned to Pike the fact that plaintiff had judgment against defendant and that as he resided, as he was informed, in Buchanan county, he ought to have a curator appointed there to take charge of his estate; and that acting upon this suggestion Pike requested Carolus to look into the matter which the latter accordingly did, and the result of which was that Smith was appointed curator of plaintiff's estate by the probate court of Buchanan county.

It must be inferred from the circumstances disclosed by the testimony that Pike was influenced in his action by no feelings other than those of kindness for the plaintiff and a desire to open the way for the ultimate professional employment of his young lawyer friend in the management of the plaintiff's estate by the curator to be appointed.　The curator, after his

appointment, having been apprised of Pike's connection with his appointment, constantly sought his advice in relation to the management of the estate of his ward, so that, without any special employment to that effect, he (Pike) became the recognized attorney for the curator in every matter which concerned the plaintiff's estate. The curator understood that Pike was in the employ of the estate, for he had testified that he expected to pay him for his services.

It appears that the plaintiff, by his next friend Stevens, brought his suit and recovered judgment against defendant; that after the affirmance of the judgment an execution was issued thereon and that defendant filed a motion in said court to quash the same, on the ground that the plaintiff had a lawfully appointed curator who alone was entitled to sue out the execution on the judgment. This motion was overruled and from the order overruling the same defendant appealed to the supreme court. It appears further that on or about the day of the appointment of the said Smith as curator for plaintiff that another curator for plaintiff was appointed by the probate court of Jackson county. It also appears that still another curator was appointed for plaintiff by a Kansas court. These various representatives of the plaintiff claimed the right to collect the judgment.

About this time the defendant brought a suit in equity in which the next friend, the two Missouri curators, the attorneys of the next friend, the plaintiff herein and the sheriff, were made parties defendant. The object of the suit was to require the defendants therein to appear and litigate their respective rights to the judgment so that upon the determination thereof the defendant herein could discharge the same, and for an injunction, etc. The plaintiff's Buchanan county curator turned over the matter so far as affected

him in his fiduciary capacity to Pike, who caused an answer to be filed wherein was set up his (the curator's) claim to the judgment.

It further appears that Thompson, the attorney for plaintiff's next friend already referred to, filed a motion in the probate court of Buchanan county for the removal of the curator appointed by that court which was successfully resisted by Pike for the curator. Later on Thompson presented a claim for allowance to the Buchanan probate court against the plaintiff's estate which was resisted by Pike for the curator. This claim was subsequently withdrawn by Thompson. Two years or more after the appointment of the Buchanan curator, and while the interpleader suit was yet undisposed of and the appeal on the motion to quash the execution was pending in the supreme court, Lucas, the attorney of defendant, made an offer of $4,000 to Pike in settlement of the judgment. This offer, it appears, Pike rejected, but stated that if he would make a proposition in writing offering $4,500 that he (Pike) would submit it to the curator. Thereupon Lucas drew the application for leave to settle on payment of the last named sum which was mailed to Pike, who caused the same to be submitted to the curator. The application was favorably considered by the curator who signed and presented it to the probate court. It appears that Pike appeared before the probate court, and in connection with the curator, favored the making of the order authorizing the acceptance of the defendant's offer.

It appears further from the testimony of the curator that he was governed in his action wholly by the counsel and advice of Pike, and that Pike did his thinking for him and that in the management of the estate of his ward he conformed in every particular to the views of Pike. During the two years in which

Pike had been connected with the curator as his attorney and adviser, he had become fully acquainted with every phase of the controversy between plaintiff and defendant.

It is insisted that that part of the curator's application to the probate court which represented "that the sole estate of said minor consists of a judgment for $5,000, rendered in favor of said minor in the circuit court of Jackson county, Missouri, on the twenty-second of April, 1886, against the Kansas City Cable Railway Company; that the said judgment is and has been in litigation, and litigation concerning the same is now pending both in the said circuit court and the supreme court of said state, and it is entirely uncertain when the said litigation will terminate, it having been begun in the year 1885, and there being two suits pending now instead of one as then, and three claimants for the judgment now," was false and misleading as to the amount then due on the judgment.  Since the date and amount of the judgment were truly represented, it may be fairly presumed that both Pike, the curator's *alter ego*, and the probate judge knew the judgment under the statute bore interest at the rate of six per cent per annum from the date when it was given, so that it will not do to say that the representation in this regard was false, or that the application suppressed any material fact in respect to the judgment, or that the curator or the probate judge were unadvised thereby as to the amount of the judgment. Nor do we think that the representation as to the existing litigation was false.  It is not disputed that the interpleader proceeding and the motion to quash the execution previously referred to were then pending and undisposed of.  Certainly, if these actions were to be prosecuted, it was quite uncertain when or how they would terminate.  It may be conceded that whatever

way they terminated, that the amount of the judgment would not be reduced, but this concession in no way impugns the correctness of the representation last alluded to. While the amount of the judgment was an important factor to be considered in determining whether or not the defendant's offer of settlement should be accepted, it was not the only one.

The plaintiff was a fatherless infant under fourteen years of age, who had no estate other than the judgment out of which he could be supported and educated. Seven years had come and gone since plaintiff, by his next friend, had invoked the assistance of the court in enforcing payment of his claim. The assertion of conflicting titles to the judgment had given rise to the two collateral actions to which the application referred made it quite likely that payment would be still further deferred. The representation then, as to the litigation, was not only true, but was a proper matter to be considered in connection with the defendant's offer.

I am unable to discover that the application of the curator falsely represented any fact or that the curator and the probate court were not fully advised of every fact material to a full and fair consideration of the defendant's offer of settlement. There is much irreconcilable conflict in the testimony of the witnesses which it is unnecessary for us to specially notice. It is sufficient to say that a very thorough examination of all the testimony has not led us to the conclusion that the settlement was induced by the misrepresentation of any material fact by defendant, or that under the circumstances it was imprudent or ill advised.

SETTLEMENT: misrepresentation: curator and probate court: mistake.

III. It is true that it is a well settled rule of equity that where a contract has been materially induced by an innocent but substantial misrepresenta-

tion of one of the parties, the other contracting party may avoid or rescind it. *Sachliben v. Hemtzel*, 117 Mo. 520. The testimony presented by the record does not disclose that the settlement was induced by any misrepresentation whatever and there the rule just quoted is without application to the present case. I do not think the testimony adduced sufficient to authorize a court of equity to disturb the settlement in question on the ground of mistake.

IV. The settlement made by the curator with the defendant in pursuance of the authority conferred by the order of the probate court was evidenced by an entry on the margin of the judgment as follows:

"I, Thomas R. Smith, public administrator and ex-officio public curator of Buchanan county, Missouri, and as such in charge of the estate of William Winter, the plaintiff in this judgment, in pursuance of the authority vested in me by law, and by virtue of an order of the probate court of said county, do hereby acknowledge full satisfaction of this judgment and costs.

"Witness my hand and seal this 18th day of · March, A. D. 1892.

"Thos. R. Smith, Curator.    [Seal]
"Attest: H. H. Noland, Clerk. By W. B. Winn; D. C."

The defendant contends that the said marginal entry is a release of the judgment, but this the plaintiff denies and insists that it is no more than a receipt, but if the former it is wholly without consideration.

A release has been defined to be the act or writing by which some claim or interest is surrendered to another; the giving up or abandoning a claim or right to the person against whom the claim exists or the right is to be exercised or enforced. 20 Am. and Eng. Ency. of Law, 740; Shep. Touch. 320; And. Law Dic. 871; R. & J.

JUDGMENT:
release:
equity: stat-
ute: probate
court.

Law Dic. 1090; Taylor's Law Dic. 585. No set form
of words is necessary to constitute a release—such
words should be used as will express the intention;
and such intention will be recognized in law and equity.
20 Am. and Eng. Ency. of Law, *supra*, and cases cited
in note 5.

It has been expressly declared by one statute that
a marginal acknowledgment of satisfaction shall have
the effect of a release. R. S., secs. 6028, 6030, 6032. I
think there can be no doubt that the said marginal
acknowledgment is a "release" in every sense that
term implies. A release may be under seal or it may
not. If of the former kind it is good without further
proof of consideration than the seal imports. 20 Am.
and Eng. Ency. of Law, 741.

In Leake on Law of Contracts [3 Ed.], 794, it is
said: "A release under seal being subject to the rules
and incidents of a contract under seal does not require
a consideration to support it either at law or in equity."
The learned author, on page 124 of the same work,
further says that "contracts made by deed under seal
do not require a consideration to give validity to the
promise in the same sense as simple contracts by agree-
ment. * * * With contracts under seal a delib-
erate intention to make a binding promise is presumed
from formalities required in the execution of the deed.
Hence a voluntary promise, that is, one that is gratui-
tous or without consideration, may be binding in the
form of a covenant by a deed under seal, though such
promise can not be made binding in the form of a sim-
ple contract. Equity follows the law in this respect
and allows a voluntary covenant full effect. But the
courts, in administering equity, *though they can not set
aside or restrict the legal operation of a contract merely
on the ground that it is voluntary,* yet refuse to apply
the auxiliary remedies of specific performance, injunc-

tion or other purely equitable remedies." In *Storm v. United States*, 94 U. S. *loc. cit.* 84, it was said that: "The seal imparts a consideration or renders proof of consideration unnecessary, because the instrument binds the parties by force of the natural presumption that an instrument executed with so much delibera- tion is founded upon some sufficient cause." *Parker v. Parmele,* 20 John. 134; 1 Smith's Lead. Cas. [7 Am. Ed], 698; 1 Chitty on Con. [11 Am. Ed.], 20; *Page v. Parker*, 8 Gray, 213; *Wing v. Chase*, 35 Me. 265; 2 Bl. Com. 446; *Followes v. Taylor*, 7 Term. 473.

And it has been declared by us that the rule which permits the consideration clause of a sealed instrument to be explained by parol does not permit the operative effect of a deed to be destroyed by showing there was no consideration whatever. *Hickman v. Hickman*, 55 Mo. App. 311; *Jackson v. R'y*, 54 Mo. App. 636. And it was declared in *Bobb v. Bobb*, 89 Mo. 411, that the want of consideration can not be shown against the recitation in the deed for the purpose of defeating the operative words of the instrument.

The plaintiff, as opposing the trend of the author- ities just referred to, calls our attention to section 383, Pomeroy's Equity Jurisprudence, where it is said by that author: "Equity has applied its principles of look- ing at the intent rather that at the form, in some in- stances, by treating the presence of a seal as a matter of no consequence, as producing no effect upon rights and duties of parties; in other instances by disregard- ing its absence, where absence would be fatal at law. Although the common law, in theory, requires a valu- able consideration in order to render any agreement valid and binding, yet it declares that a seal was con- clusive evidence of such a consideration, and under no circumstances would it permit this arbitrary effect to be removed by the evidence showing, no matter how

clearly, the absence of any consideration. Equity, disregarding such form and looking at the reality, always requires an actual consideration, and permits the want of it to be shown, notwithstanding the seal, and applies this doctrine to covenants, settlements, and executory agreements of every description." By reference to the cases cited in the foot notes of the section, the meaning intended to be conveyed by the language of the section will become clear. It will be seen that the doctrine of the text is limited in its application to those cases where a party seeks specific performance of a voluntary agreement or voluntary covenant under seal. A court of equity will not execute a voluntary contract and the principle of these courts to withhold their assistance from a volunteer applies equally whether he seeks to have the benefit of a contract, a covenant or a settlement. Want of consideration is a sufficient reason for refusing the assistance of a court of equity. If in a suit for specific performance of a contract it is developed that such contract is voluntary or, which is the same thing, is supported by no consideration other than that imparted by the seal thereto, the court will refuse to lend the assistance invoked. In no case to which we have had access has this doctrine been extended to the class of cases to which this belongs.

If the plaintiff were seeking to enforce specific performance rather than to overthrow the contract, and the defendant were defending on the ground that the contract was without consideration other than that imparted by the seal, the doctrine announced in the excerpt already quoted from Pomeroy's Equity Jurisprudence would apply. But in a case like this the contract will be given full effect in both law and equity. Leake on Con. 124, *supra*.

In *Riley v. Kershan*, 52 Mo. 224, cited by plaintiff, it was said "that the established rule to be found in

—: —: —:
—: seal: con-
sideration.

all the earlier cases is that the payment of part of a debt or liquidated damages is no satisfaction of the whole debt, even where the creditor agrees to receive a part for the whole and gives a receipt for the whole demand. But this rule must be so far qualified as not to include the common case of the payment of a debt by a fair and well understood compromise carried faithfully into effect *even if there were no release under seal.*" The effect of the seal is by implication here fully recognized. The authorities fully establish the rule that where there is an overdue money demand liquidated and not disputed and a part only of it is paid, though this is accepted as full satisfaction, there is only part performance of the obligation in kind and the agreement to discharge the residue of the debt not paid is void for want of consideration. Sutherland on Damages, 426. This rule rests mainly upon a want of consideration for the new agreement or promise. But it is without application here for the reason that the agreement to discharge is evidenced by a release under seal which conclusively imports a consideration.

In *Ryan v. Ward,* 48 N. Y. 204, it was said: "A man can not by the payment of $1,500 pay an admitted debt of $2,000. This has never been the law. In such case nothing less than a technical release under seal can bar a recovery." I am referred to *Saunders v. Blythe,* 112 Mo. 1, where it was said: "The release recited only the nominal consideration of one dollar, but it was under seal and became an executed contract upon delivery and acceptance. As such no other consideration was necessary to support it, so far as concerns the legal rights of the parties thereto; and no equities are involved or have been invoked in the case." This statement of the law is not at variance with what I have already stated it to be. Though the release was

under seal, it was not impregnable to assault in equity on the ground of fraud or mistake, and this was no doubt what was meant by the remark of the court in the latter part of the above paragraph. The case recognizes fully the force and effect of the rule that an instrument under seal requires no other consideration for its support and that such instrument is valid until set aside for fraud or mistake. I am therefore of the opinion that the release of the judgment ought not to be overthrown for want of consideration.

It is further insisted by the defendant that the release is supported by a valuable consideration as well as that imparted by the seal. Chancellor Kent has defined a valuable consideration to be one that is either a benefit to the party promising or some trouble or prejudice to the party to whom the promise is made. 2 Kent, Com. [2 Ed.] 465. If the least benefit or damage be received by the promisor from the promisee or a third person, or if the promisee sustain any or the least injury or detriment, it will constitute a sufficient consideration to render the agreement valid. A court will shut its eyes to the inequality between the consideration and the promise. *Wirt v. Sherman*, 67 Mo. App. *loc. cit.* 172, and cases cited; *Brownlow v. Wollard*, 66 Mo. App. 636. In *Hooker v. Ins. Co.*, 69 Mo. App. 136, this court, in speaking through Judge ELLISON, said: "The law is that a contract whereby the creditor agrees to accept, or does accept a sum of his debtor less than the debt, will not prevent the creditor recovering the whole of the original debt; for the reason the contract is without consideration. But if there be any benefit or even any legal possibility of benefit to the creditor thrown in, that additional weight will turn the scale and render the consideration sufficient to support the agreement." *Jeffrey v. Davis*, 124 N. Y. 164.

*—: payment: consideration.*

In the case just cited will be found many illustrations in support of the proposition quoted. Thus if the payment of the lesser sum is provided to be paid at a different place from that where the original was to be paid, it is a sufficient consideration. *Foakes v. Boar*, L. R. 9 App. Cas. 605. So the receipt of a negotiable note for a less sum will discharge the whole of an open debt for the reason that it is more advantageous to the creditor to have the negotiable paper. *Jeffrey v. Davis, supra*. So if the lesser sum be paid in discharge of the greater before the latter is due, it is a valid consideration. *Brooks v. White*, 2 Met. 283. And so if a third party pay a lesser sum to the creditor in agreement to discharge the whole debt of the debtor it is valid. *Wilkes v. Slaughter*, 49 Ark. 237; *Gordon v. Moore*, 44 Ark. 349.

The plaintiff, it is true, had judgment, but he could not enforce it by final process on account of the suits which the defendant had deemed necessary to bring to protect itself against the various conflicting claims set up to the judgment. Pending these suits the defendant, under the agreement, paid the $4,500 in full discharge in advance of the time when it could have been compelled to do so. Besides this, it took the risk incident to its election to make the payment to the Buchanan county curator before the rights of all the parties claiming the judgment had been judicially determined by the suits. In view of these and other facts relating to the transaction, we are inclined to think the release was supported by a sufficient consideration, deemed valuable in law, to support it. Leake on Contract [Eng. Ed.], 888; *Savage v. Everman*, 70 Pa. St. 315.

It seems to me that whether the release be regarded as a technical release under seal or a release not under seal that it is supported by a sufficient consider-

Winter v. K. C. Cable R'y Co.

ation and ought to be upheld. It is true
INFANTS: courts: that where the rights of an infant are in-
technical rules:
fairness.    volved, as in this case, courts will not
search for technical rules to sustain transactions which
are not characterized by the strictest fairness, yet we
discover nothing in this case to render inapplicable to
the principles to which we have hereinbefore ad-
verted.

I think that the decree of the circuit court should
be reversed.

GILL, J.—In my opinion the judgment of the cir-
cuit court is right and ought to be affirmed. The
learned judge who tried the case below has found that
the so-called compromise or settlement of the infant's
judgment against the cable company was procured by
misrepresentation, and that the taking and acceptance
STATEMENT.  of $4,500 in satisfaction of said judgment
was without consideration and should not
therefore bar the infant from recovering the balance
justly due him. From a patient consideration of the
entire record, in the light of the authorities, I am of
the same opinion. It seems to me that the facts are
about as stated in plaintiff's petition, which will be
found quoted at length in Judge SMITH's opinion. In
April, 1886, the infant plaintiff obtained in the Jack-
son circuit court a judgment against the defendant for
$5,000; the defendant appealed to the supreme court,
giving a good and sufficient appeal bond, and the judg-
ment was affirmed by that court in December, 1889.
Here, then, was an indisputable and unquestioned claim
or demand for $5,000, bearing six per cent interest
from April 22, 1886, which the infant plaintiff had
against the defendant. And it is admitted that the
same was, after the affirmance, valid and binding, and

that the defendant and its securities on the appeal bond were all entirely solvent. This judgment with accrued interest to the date of the pretended settlement in March, 1892, amounted to about $6,800. In satisfaction of this sum the defendant paid to the infant's curator the sum of $4,500 and the curator entered on the margin of the judgment record at Kansas City an acknowledgment of full satisfaction thereof.

The effort of this suit is to get back of this record satisfaction and establish the infant plaintiff's right to recover the balance due on the judgment. ——: payment: consideration. The rule of law is conceded that payment of part of an undisputed debt will not discharge the whole, even if expressly accepted for that purpose. The rule is thus comprehensively stated: "All claims for damages are payable in money. When a demand therefor is certain, or rendered certain by agreement or adjudication, and is no longer disputed, it can not be satisfied with any less amount than the precise amount owing. If a part is paid, there is a partial performance of the obligation of the party liable and no more. His payment is only a discharge *pro tanto*. This part payment may have been induced solely by the assurance that it would be accepted as full satisfaction, and it may have been impossible to compel payment; still the party paying has done in kind only what he was under a legal obligation to do in respect to the amount paid, and the corresponding amount of the obligation is thereby satisfied, but no more; therefore the agreement of the creditor to discharge the residue is in a legal sense *gratuitous and not binding*." 1 Sutherland on Damages [2 Ed.], sec. 245.

If, now, the rule just stated is to be applied in this case, then clearly the infant plaintiff is entitled to have the balance of his liquidated claim against the defend-

ant.   At the date of the so called settlement (March, 1892), he had a final and conclusive judgment against the defendant which at that time called for $6,800. The defendant paid $4,500 and asks to be acquitted not only of that portion of the debt, but also of the remainder amounting then to $2,300.   This can not be allowed unless there be some consideration moving to the creditor for the discharge of the balance.

In this connection the claim is advanced that as the receipt or acknowledgment of satisfaction by the curator was made over his seal, the plaintiff JUDGMENT: re- is precluded from disputing the existence of lease: equity: statute: probate a consideration—in other words, that such court. seal *"conclusively* imports a consideration" for the discharge of the entire debt.   This contention is based on the theory that the marginal satisfaction of the judgment is to be treated as a technical common law release under seal.   It seems to me that this attaches more importance to the writing in question than it deserves.   It is not a contract in the proper use of that term; is nothing more than an acknowledgment of the payment of a debt—an admission or declaration by the curator that the judgment in favor of his ward had been paid.   While competent evidence tending to prove payment, it is in no sense conclusive, was entitled to no further binding force than any other written receipt, and is subject, therefore, to explanation or even contradiction.   *Ryan v. Ward,* 48 N. Y. 204.   A receipt or ordinary acknowledgment of satisfaction is all the order of the probate court authorized or intended the curator to give.   It will be presumed that the probate court intended the satisfaction of judgment provided by the statute and to be entered as there required. R. S. 1889, secs. 6028, 6029, 6030, 6031, 6032.   In so compounding the judgment the curator could only act in pursuance of and subject to the orders of the pro-

bate court. R. S. 1889, secs. 5297, 5298. These sections (6028, etc.) clearly do not contemplate such acknowledgments to be under seal nor to be evidenced by technical common law releases under seal. I am unwilling then to say, because the plaintiff's curator unnecessarily and without authority attached a scroll to his signature in acknowledging satisfaction of the judgment, that said curator thereby estopped his ward from ever after inquiring into or impeaching the consideration of the alleged discharge.

Moreover, if this written satisfaction of the record should even be considered in the category of sealed contracts, it would yet be within the province of a court of equity to go behind the seal and inquire into the matter of consideration. "Equity, disregarding such form and looking at the reality, always requires an actual consideration and permits the want of it to be shown, notwithstanding the seal." 1 Pomeroy's Eq. [2 Ed.], sec. 383, also secs. 370–379, same volume. This has been the doctrine of chancery courts from the beginning; and as years have gone by, modern courts have gotten further from the influences of such rigid and barbarous dogmas of the ancient courts of law. In this state the *law* courts even have in a large measure been released from this subserviency to mere form. By section 2090 of the present statutory revision it is provided: "Whenever a specialty, or other written contract for the payment of money, or the delivery of property, or for the performance of a duty, shall be the foundation of an action or defense in whole or in part, or shall be given in evidence in any court without being pleaded, the proper party may prove the want or failure of the consideration, in whole or in part, of such specialty or other written contract."

When now we get behind this so-called seal (which,

as I think, was uselessly and ineffectively attached to the marginal satisfaction) it seems clear to me that there was no consideration, moving between the contracting parties, for the satisfaction of the judgment save and except only the payment of said $4,500. And if this be so, then the debt, which it was then conceded amounted to $6,800, was, according to the rule before announced, satisfied only to the extent of $4,500 and no further.

In order to understand the status of the parties at the date of the so-called settlement, it seems necessary to recall the main facts attending the controversy. In the early part of January, 1890, the mandate came back from the supreme court announcing the affirmance of the judgment of Willie Winter by next friend against the defendant. On the twenty-ninth day of the same month the public administrator of Buchanan county, and *ex officio* public curator under the order of the probate court of said county, took charge of the estate of the minor plaintiff; and on the same day the attorney for the plaintiff in the main suit had the probate court of Jackson county appoint another curator. Each appointment had been made without knowledge of the other. Since the boy's residence was at the time in Buchanan county, it is clear that the first appointment was proper and the last improper, and so the parties seem to have subsequently agreed. Twelve days after the appointment of these curators (February 10, 1890) the next friend who had prosecuted the suit for the minor sued out execution against the defendant. Thereupon, on the same day, February 10, 1890, defendant filed in the Jackson circuit court a petition in the nature of a bill of interpleader—making the rightful curator of Buchanan county and the party as well who was appointed curator in Jackson county as also the next friend and

FACTS.

attorney who had sued out the execution, all parties defendant, and in its petition set up that conflicting claims were made by these curators and next friend as to the rightful custody of the proceeds of the judgment, and prayed the execution be enjoined and the parties be required to litigate their respective claims.    The defendant did not bring in the money due on the judgment as it might have done and thereby relieve itself of any further liability in the premises.    At the filing of the bill the court granted an order restraining the execution until a hearing could be had on the application for temporary injunction.    This was subsequently heard and on March 8, 1890, the court denied the application and dissolved the restraining order.    At once, on said March 8, and after dissolution of the injunction order, defendant filed in the circuit court a motion to quash the execution on the alleged ground that the next friend had no authority to order out such execution.    This motion was heard and overruled May 9, 1890, and defendant appealed to the supreme court. At the date of the settlement (in March, 1892) the interpleader suit above mentioned, though still appearing on the docket of the Jackson county circuit court, had in fact been abandoned by the defendant, and was ultimately dismissed by the court because not listed for trial for more than three terms as required by a rule of that court.    And at the time of said so-called compromise or settlement the motion to quash the execution, which had been denied by the circuit court and appealed, was set for trial in the supreme court, and as the witnesses put it, was about to be reached.    This appeal was dismissed ten days after the settlement.

It was now at the date of this settlement—when the injunction or interpleader suit begun in March, 1890, had failed of its purpose and was practically abandoned, and when the defendant's appeal on the motion to

quash the execution was about to be reached on the
supreme court docket—the defendant, by its general
counsel, prepared a written petition for compromise,
and which said petition was through a friendly attor-
ney at St. Joseph presented to the infant's curator who
signed the same, and on which said petition the pro-
bate court directed the settlement now attacked. The
curator was induced to state in said petition that his
ward's entire estate consisted of a judgment against
defendant for $5,000 and "that the said judgment is
and has been in litigation, and litigation concerning
the same is now pending both in the said circuit court
and the supreme court of said state, and it is entirely
uncertain when the said litigation will terminate, it
having been begun in the year 1885, and there being
two suits pending now instead of one as then, and
three claimants for the judgment now." It was then
stated that the railway company was willing to pay
$4,500 cash in compromise and settlement, and au-
thority for accepting this proposition was asked.

As already stated, the petition for this compromise
was prepared by the defendant's counsel at Kansas
City and presented to the curator at St. Joseph through
a lawyer who was at least in sympathy with the de-
fendant, but whom the curator trusted under the im-
pression that said attorney was acting in the interest
of his ward.

Shortly after the settlement had been effected and
the $4,500 paid, the probate court entered an order
rescinding the former one authorizing the compromise
wherein it recited that said original order "was made
on a mistake of facts as to the amount due on said
judgment, and as to litigation in relation thereto then
pending, and in reliance by said administrator upon
the representations of said railway company, which
representations were not true; and it now appearing

that said judgment was final, that the same with interest amounted to about $6,800, instead of $5,000 as represented, and that said railway company and its securities who were and are liable therefor are solvent, and it further appearing that pursuant to said order of this court said administrator accepted said sum of $4,500 of said company and entered satisfaction thereof in good faith by mistake, as aforesaid; it is now ordered that said order directing a compromise of of said judgment be and the same is now hereby set aside, to the end that the same shall not prevent other and further proceedings for the collection of the balance remaining due and unpaid on said judgment. And that said administrator be and he is now here ordered to enter a credit on said judgment for said sum of $4,500, as of the date of receipt thereof, instead of a satisfaction in full of said judgment.''

The evidence shows that the curator and probate judge were deceived as to the extent of the judgment and that the compromise was effected under the impression that the infant's demand amounted only to $5,000 instead of $6,800; and further, it appears that the curator and probate judge were likewise deceived as to the nature of the litigation pending. They were told ''that the said judgment is and has been in litigation, and litigation concerning the same is now pending in the said circuit court and the supreme court, and it is entirely uncertain when the said litigation will terminate, it having been begun in the year 1885, and there being two suits pending now instead of one as then;'' whereas, the facts were that there was no litigation pending or dispute as to the infant's rights in the premises. The only contest then existing, if contest it may be called, related solely to the question as to who was the proper custodian of the proceeds of the judgment after the

JUDGMENT: release: consideration.

same was collected. As between the minor plaintiff and defendant, all controversies had been settled by the judgment of a court of final resort; and the way was open at any time for defendant to pay said judgment interest and costs. It could have safely paid to the sheriff holding the execution or into court when filing the bill of interpleader, or even to the curator who had been appointed by its (the defendant's) own direction. But however this may be, it is clear that the infant plaintiff was the absolute and unquestioned owner of the judgment, then amounting to $6,800, and the defendant ought not to be permitted to satisfy this by a discount of $2,300, when for such reduction there was no consideration as between the debtor and creditor. There was no question at any time as to the perfect solvency of the defendant, and besides, it had given a good *supersedeas* bond. It is true that defendant may have further delayed payment as it had done for two years, but yet the minor plaintiff was for this fully protected and compensated by the addition of interest which the law fixes. But these vexatious lawsuits—whether brought about by defendant to harass opposing lawyers or to delay the collection of a judgment which its counsel pronounce a great wrong, or whether merely to have the courts settle as to who should properly represent the minor—could furnish no consideration for throwing off $2,300 of a demand concerning which there was no longer any possible dispute. "Payment of a lesser sum will not discharge a debtor for a greater sum without some additional consideration; the creditor must besides a part receive something of benefit that he would not otherwise have had." 54 Ill. App. 616. I agree with Judge Smith when he says: "Where the rights of an infant are involved, as in this case, courts will not search for technical rules to sustain transactions which are not characterized by the

strictest fairness." But with all due respect I must differ with him as to the nature of this co-called compromise. As I read this record it discloses a transaction characterized by great unfairness toward the infant plaintiff and one which the courts ought not to sustain.

The contention that before plaintiff can get the relief here sought there should have been a tender back of the $4,500 paid by defendant, is without merit. It seems to be well settled "that one who attempts to rescind a transaction on the ground of fraud is not required to restore that which in any event he would be entitled to retain either by virtue of the contract sought to be set aside, or of the original liability." *Kloy v. Healy*, 127 N. Y. 555, and authorities cited. In the case just cited it is said: "While the sum retained should be taken into account in the award of relief, an offer to restore it is not a condition precedent to the bringing of an action to set aside the fraudulent release. * * * "If her action failed she was entitled to the sum received by virtue of the transaction itself. If she succeeded, the sum was less than she was concededly entitled to by the original judgment. In any event, therefore, she had only that which without dispute belonged to her, and a restoration or the offer thereof was unnecessary prior to the commencement of the action, for such conditions as might be essential to the protection of the defendant could be inserted in the judgment ultimately rendered."

A distinction exists between cases of this nature and where no liability at all is conceded, and was so recognized by us in *Alexander v. R'y*, 54 Mo. App. 66, 71, and by the St. Louis court of appeals in opinion by BIGGS, J., in *Girard v. Wheel Co.*, 46 Mo. App., at

*—: —: equity: rescission: tender.*

page 116, and by the supreme court in same case, 123 Mo., at page 383.

Judge ELLISON concurs in the views here expressed. The judgment of the circuit court will therefore be affirmed.